WILLIAMS, Judge.
Plaintiff appeals the judgment of the trial court in favor of defendant. The trial court found that Mrs. John E. Hurley and Barry Fox had entered into a written agreement containing an arbitration clause. The court further found that the arbitration clause satisfies the requirements of LSA-R.S. 9:4201, and confirmed the award of the arbitrator in favor of defendant Barry Fox. We affirm the judgment of the trial court.

Facts

In the latter part of 1980, plaintiff sought the services of defendant, an architect, in connection with the construction of a residence. On December 31, 1980, defendant sent to Mrs. Hurley a letter in which he discussed the copy of a Standard American Institute of Architects (AIA) Agreement Between Owner and Architect, which he had signed and enclosed. At plaintiff’s request, defendant sent copies of the letter and contract to plaintiff’s attorney, Mr. M. Truman Woodward.
Plaintiff and defendant met several times to discuss and/or work on the project. Mrs. Hurley had the defendant view the house she granted duplicated. Mr. Fox drew several schematic and preliminary drawings of the house. However, he understood at that time that Mrs. Hurley was not certain whether she would build the new residence.
Mrs. Hurley decided to go forward with the project in March of 1982. Defendant, serving as architect on the project, worked toward finding a contractor and eventually hired Mr. Robert S. Amoss. The house was completed under the direction of defendant.
After completion of the project, disputes arose over matters of construction and design. In a letter dated August 24, 1984, plaintiff’s attorney, Emile A. Wagner, III, an associate of Mr. Woodward, notified Mr. Fox that Mrs. Hurley was dissatisfied with certain aspects of the house and was prepared to seek a determination of her claim in appropriate arbitration proceedings.
In February of 1986, Barry Fox initiated arbitration proceedings to recover the unpaid portion of his fees, $13,910.20, pursuant to the AIA Agreement Between Owner and Architect which he had delivered to Mrs. Hurley and her attorney. Both parties participated in the arbitration process for eight months. Mrs. Hurley filed a counterclaim for damages arising from those aspects of design and construction with which she was dissatisfied. Hurley and Fox considered, suggested, accepted or rejected several arbitrators and finally agreed upon Mr. Favret. They agreed upon a location for the hearing, and agreed that the hearing would take place on December 8, 1986.
On November 21, 1986, counsel for Mrs. Hurley, A.R. Christovich, informed the American Arbitration Association (AAA) that Mrs. Hurley would not participate in the arbitration proceedings because she *889 had not signed a contract providing for arbitration. Plaintiffs counsel informed the AAA that his client considered the proceedings to be at an end. Defendant maintained that under the terms of the contract into which the parties had entered, plaintiff was obligated to submit matters of controversy to binding arbitration.
On December 2, 1986, Mrs. Hurley filed suit in district court. Defendant moved the court to stay its proceedings pending completion of the arbitration proceedings. Mr. Fox did not move the court to determine the validity of the arbitration agreement nor to order plaintiffs participation, nor did Mrs. Hurley move the court to stay the arbitration proceedings.
Counsel for Barry Fox continued to maintain that the arbitration proceedings were valid and would go forward as planned. On December 4, 1986, AAA notified counsel for both plaintiff and defendant, and the arbitrator, Mr. Favret, that the hearing would take place as scheduled on December 8, 1986, pursuant to Rule 30 of the Construction Industry Rules.[1]
The arbitration hearing was conducted in plaintiffs absence. Defendant presented both testimonial and documentary evidence. The arbitrator found in favor of defendant, awarding him the entire amount which he claimed was the unpaid portion of his fee. Plaintiff appeals the finding of the trial court that she had agreed to binding arbitration and the confirmation of the award in favor of defendant.
Appellant argues that because she did not sign the AIA Agreement, in which the arbitration clause is found, she cannot be bound by that document. On a previous appeal by defendant, this court ruled that a written agreement to arbitrate need not be signed by the parties.[2] Hurley v. Fox, 520 So.2d 467 (1988). We are now bound by that judgment.
The only issues presented herein are whether the written contract signed by defendant expresses the terms of the agreement, if any, which existed between the parties, and whether the arbitration clause in the agreement satisfies the requirements of LSA-R.S. 9:4201.

Agreement Between the Parties

Plaintiff claims that she did not enter into and cannot be bound by the written contract (AIA Standard Form Agreement Between Owner and Architect) because at the time she contacted defendant in 1981, she had still not decided whether she would build a. house. Plaintiff claims that the fact that her counsel, M. Truman Woodward, only specifically directed her to read pages 10 and 11 of the contract form is further proof that there was no meeting of the minds as to the contract. Although Mrs. Hurley testified that she would not willingly and knowingly execute a document providing for binding and final arbitration, she did in fact sign a construction contract calling for binding arbitration. Counsel for plaintiff argues that plaintiff signed that contract only upon advice of her attorney without reading the document and without knowing that it had an arbitration clause.
We find that the record clearly supports the trial court finding that the AIA Standard Form Agreement Between Owner and Architect expresses the terms of the agreement between the parties.
*890 In December of 1980, defendant submitted an AIA Standard Form Agreement between Owner and Architect with a cover letter to Mrs. Hurley in his office. The letter mentioned at length the contract details of the fees of the architect, chargeable expenses, design phases, bidding, and inspection and administration phases. At the end of the letter was a notation: “Enclosure — Contract.” Fox testified that he pointed out to plaintiff the articles allowing plaintiff to submit a written request to defendant that he stop work on the project. He also pointed out the articles indicating the amount of the fee and how it would be disbursed. At plaintiffs request, Fox sent a copy of the letter and contract to plaintiffs counsel, M. Truman Woodward. Neither Mr. Woodward nor Mrs. Hurley ever indicated to Mr. Fox that any part of the contract was unsatisfactory.
Mrs. Hurley was a graduate of Newcomb College, where she majored in finance. She received a Master’s in Business Administration from Tulane University in 1952. She has been an active community board member since she was 21 years old. During World War II she was Vice Chairman of the War Finance Committee, raising millions of dollars through the sale (by agents) of war bonds.
Mrs. Hurley stated more than once that she does not handle her own legal affairs, only her financial affairs. She testified that she read only pages 10 and 11 of the contract, because those were the only pages to which her attorney specifically called her attention. The fact that Mrs. Hurley’s attorney, M. Truman Woodward, sent her a copy of the contract and that he called her attention to some of the provisions supports defendant’s position that the parties relied upon the written document and expected to rely on the provisions contained therein.
At no time did Mrs. Hurley tell defendant that she wanted to discontinue all work on the project, although she did state that she wanted to postpone the work because she was moving into a house owned by her husband, Mr. Alfred Moran.
Mr. Fox sent Mrs. Hurley a bill in February of 1981, which Mrs. Hurley paid in March of 1981. Mrs. Hurley again contacted defendant in March of 1982 when they discussed the continuation of development of plans for the new residence. At that time defendant was instructed to do more drawings. After the March, 1982 meeting, defendant sent Mrs. Hurley a letter regarding construction of the house. Mrs. Hurley claims that she considered this letter to be the contract for architectural services. We reject this argument. The first full paragraph of the letter begins: “Should you decide to proceed with the plans for the house, I would be most happy to continue as architect.” (Emphasis added). The letter obviously refers back to earlier plans or negotiations for the construction of a residence. Unlike the letter delivered to Mrs. Hurley in December of 1980, the March 12, 1982 letter fails to delineate the rights and obligations of the architect such as chargeable expenses, design phases, bidding, and inspection and administration phases. The letter simply provides that the standard fee for a residence is 10%, that the fees already paid would be credited against the total fee, and that defendant will complete the work as quickly as possible.
As defendant pointed out at trial, had he not been continuing as architect, he would not have credited the amounts paid by Mrs. Hurley in March of 1981 ($6,400.00) against the 10% construction cost, his standard fee. Had defendant been re-hired rather than continuing as architect, he would surely have charged Mrs. Hurley the initial $6,400.00 (an hourly rate for the work he did in 1981) in addition to 10% of the total construction cost. It is apparent that the parties had an agreement which pre-existed the March 12, 1982 letter from Barry Fox to Mrs. Hurley.
Though Mrs. Hurley testified that she would never knowingly agree to submit to binding arbitration, she did admit signing the AIA Standard Form of Agreement Between Owner and Contractor delivered to Mrs. Hurley and her attorney, Emile Wagner, a partner of M. Truman Woodward. Specifically incorporated into this contract, by reference, was AIA document 201 which *891 contains an arbitration clause. Mrs. Hurley had made changes in the contract which all related to the kitchen area, and stated that she referred all legal matters, including those in the contract, to Mr. Wagner. She signed the contract in the presence of and with the advice of Mr. Wagner.
In a letter dated August 24, 1984, Mrs. Hurley’s counsel threatened Mr. Fox with arbitration. Mrs. Hurley stated that she did not instruct Mr. Wagner that she would not submit to arbitration because she presumed she had signed the contract. This presumption on the part of Mrs. Hurley would indicate that she had in fact agreed to and relied upon the provisions of the contract. Further support for this position is found in the testimony of Mr. Wagner. Mr. Wagner testified that in reviewing the file in preparation for this hearing, he presumed that the Owner/Architect Agreement is the document they worked from when they went forward to do the construction contract. As noted, Mrs. Hurley specifically left all legal matters in the hands of Mr. Wagner.
Finally, in response to Barry Fox’s demand for arbitration, Mrs. Hurley’s counsel (at that time, A.R. Christovieh) filed a counterclaim, the first paragraph of which states: “Respondent and cross-claimant under the written contract of January 5, 1981 and associated documents and correspondence demand arbitration accordingly.”
In light of the testimony, we cannot find that the trial court erred in finding that the contract contains the terms of the agreement between the parties. The trial judge had the opportunity to view the parties and found the defendant’s testimony credible. The judge found that these were ongoing negotiations between the parties and that once plaintiff decided to go forward with the project she instructed defendant to continue with the work that had been interrupted. Under the facts presented, we cannot conclude that the trial court erred in finding it more probable than not that the AIA Standard Form Agreement Between Owner and Architect constituted the complete agreement between the parties.

Validity of Arbitration Clause

Because we find that the written contract signed by defendant expresses the terms of the agreement which existed between the parties, we must determine whether the arbitration clause in the agreement satisfies the requirements of LSA-R.S. 9:4201.
LSA-R.S. 9:4201 provides:
Validity of arbitration agreements
A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
The contract entered into by the parties, AIA Standard Form Agreement Between Owner and Architect, contains the following arbitration clause:
Article 9. Arbitration
“All claims, disputes and other matters in question between the parties to this Agreement ... shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties agree otherwise.”
This agreement to arbitrate is in writing and applies to any controversy arising out of the contract into which the parties had entered. Plaintiff has failed to prove sufficient grounds at law or in equity for revocation of the arbitration agreement.
We find that the arbitration clause is valid under LSA-R.S. 9:4201. The judgment of the trial court is affirmed.
AFFIRMED.

. Rule 30 provides:
30. Arbitration in the Absence of a Party or Counsel
Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or counsel, who, after due notice, fails to be present or fails to obtain an adjournment. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as is deemed necessary for the making of an award.

. Barry Fox had appealed the trial court’s denial of his motion to confirm the arbitration award, which denial was based exclusively on the fact that Mrs. Hurley had not signed the "contract.” This court found that LSA-R.S. 9:4201 does not require that-a written agreement to arbitrate be signed by the parties. The judgment was set aside and the case remanded for a determination of whether there was adequate proof that the written contract signed by defendant expresses the terms of the agreement, if any, which existed between the parties, and whether the arbitration clause in the agreement satisfies the requirements of LSA-R.S. 9:4201.