993 So.2d 735 (2008)
Vera M. RAINEY
v.
ENTERGY GULF STATES, INC. and Mike Case.
No. 2006 CA 0816.
Court of Appeal of Louisiana, First Circuit.
August 15, 2008.
Rehearing Denied September 25, 2008.
*736 Kenneth P. Carter, Cory R. Cahn, New Orleans, LA, for Defendant/Appellant Entergy Gulf States, Inc.
John A. Braymer, Baton Rouge, LA.
Russell W. Beall, Baton Rouge, LA, for Plaintiffs/Appellees Joanne Mays and James McAllister.
Leonard Cardenas, III, Baton Rouge, LA, In Proper Person as Intervenor.
Before CARTER, C.J., WHIPPLE, PARRO, KUHN, GUIDRY, PETTIGREW, DOWNING, GAIDRY, McDONALD, McCLENDON, and WELCH, JJ.[1]
PER CURIAM.
Defendant-appellant, Entergy Gulf States, Inc. ("Entergy"), appeals the trial court's judgment that rejected its affirmative defense of statutory employer tort immunity and held it liable for the damages sustained by Vera M. Rainey ("Rainey"). This court, sitting en banc, has considered the merits of Entergy's appeal. Eleven of the twelve judges of this court have participated, but we are unable to render a decree reflecting a majority judgment on each issue presented in this case. Because there is no majority consensus on the dispositive issue of whether Entergy is immune from tort liability as Rainey's statutory employer, there is no executable majority judgment, and the effect of this court's vote is that the trial court's judgment stands.

I. FACTUAL AND PROCEDURAL BACKGROUND
In January 1999, ABB C-E Services, Inc. ("ABB") began a construction job at *737 Entergy's Willow Glen power plant jobsite in St. Gabriel. ABB performed work pursuant to an agreement with Entergy that was executed in 1992. On February 15, 1999, Rainey, a journeyman boilermaker working for ABB at Willow Glen, fell down a stairway at the jobsite. Rainey filed a negligence action against Entergy, asserting that Entergy caused the accident since, among other things, it utilized a substandard staircase and failed to provide adequate lighting in the work area.[2] ABB intervened in the suit and sought reimbursement for the workers' compensation benefits it paid to and on behalf of Rainey. Prior to trial, Entergy attempted to raise the statutory employer defense, but the trial court denied Entergy's motion for leave of court to file a supplemental and amending answer to allege the defense.[3]
After a three-day bench trial, which commenced on December 6, 2000, the trial court took the case under advisement. On March 14, 2001, the trial court rendered judgment in favor of Rainey and against Entergy, awarding Rainey $839,916.08 in damages.[4] The trial court also awarded ABB $53,641.52 for the workers' compensation benefits paid on behalf of Rainey.
Entergy appealed that judgment. After the appeal was lodged with this court, Rainey died of an illness unrelated to the injuries she sustained on February 15, 1999.
Craig Brigalia was confirmed as testamentary executor of Rainey's succession, and this court ordered his substitution as the proper party plaintiff. In that appeal, Entergy raised eight assignments of error, including that the trial court had abused its discretion by not allowing it to amend its answer to assert the statutory employer defense. This court found merit in that assignment, reversed the trial court's judgment, and remanded the case to the trial court to "allow Entergy ... to amend its answer," "conduct a trial on the merits of the statutory employer issue only" and "render an appropriate judgment that decides the relevant issue or issues of the case." Rainey v. Entergy Gulf States, Inc., 01-2414 (La.App. 1st Cir.11/8/02), 840 So.2d 586, 591. Thus, this court pretermitted Entergy's remaining assignments of error.
Thereafter, this court granted Brigalia a rehearing. Prior to submission of the matter on rehearing, Entergy filed a peremptory exception raising the objection of no right of action, asserting that Rainey's two surviving children, James A. McAllister[5] and Joanne M. Mays, were the legal *738 successors of Rainey's cause of action, pursuant to La. C.C. art. 2315.1 A(1), and, therefore, that Brigalia was precluded from asserting any claim in the suit. Brigalia responded with a motion of intervention, seeking recognition as a party in his individual capacity and, in the alternative, as a particular legatee and the residual legatee of Rainey's estate and cause of action.[6] On rehearing, this court ruled that McAllister and Mays were "parties needed for a just adjudication" and remanded the matter to the trial court.[7]Rainey v. Entergy Gulf States, Inc., 01-2414, pp. 4-5 (La.App. 1st Cir.7/2/03), 859 So.2d 63, 66, writ denied, 03-2107 (La.11/14/03), 858 So.2d 426. This court expressly stated that it would not rule on the request for rehearing until a determination of the proper parties had been made. Id.
Following the remand, the trial court: (1) ordered that Rainey's children "be hereby procedurally substituted as parties plaintiff," (2) overruled Entergy's peremptory exception raising the objection of no right of action, and (3) granted "Brigalia's Alternative Motion to Intervene." Thereafter, this court considered the rehearing request and concluded that Mays and McAllister ("plaintiffs") were the proper parties to continue the action. However, the trial court's judgment was reversed to the extent that it overruled Entergy's exception raising the objection of no right of action, and this court dismissed Brigalia's claims, Rainey v. Entergy Gulf States, Inc., 01-2414, p. 15 (La.App. 1st Cir.6/25/04), 885 So.2d 1193, 1204, writs denied, 04-1878, 04-1883, and 04-1884 (La.11/15/04), 887 So.2d 478 and 479. This court reinstated its November 8, 2002 original opinion. Thus, this court again remanded the matter to the trial court with instructions to "allow Entergy ... to amend its answer," "conduct a trial on the merits of the statutory employer issue only," and "render an appropriate judgment that decides the relevant issue or issues of the case." Id.
Upon remand, Leonard Cardenas, III, counsel for Rainey and Brigalia, intervened in the lawsuit to protect his interests and assert a privilege for any attorney's fees and costs recovered. Entergy also filed an amended answer, in which it asserted its defense, averring that Rainey was the statutory employee of Entergy at the time of her alleged injuries and that Rainey's recovery was limited to workers' compensation benefits. The trial of the statutory employer defense was held on August 1, 2005, and on November 2, 2005, the trial court signed a judgment that ordered "the affirmative defense of statutory employer tort immunity asserted by defendant [Entergy] is denied." Entergy suspensively appealed the trial court's ruling.
Because the judgment only addressed the statutory employer issue and did not address any other "issues of the case," this court concluded that the November 2, 2005 judgment was a non-appealable partial final judgment. On May 8, 2007, we issued *739 an order remanding the matter to the trial court "for the limited purpose of having the trial court sign a judgment that adjudicates all the issues, including the statutory employer issue, based on the existing record," and we ordered supplementation of the appellate record with the new judgment.
The trial court signed a new judgment on May 31, 2007, denying Entergy's statutory employer defense and reinstating its prior damage award of $839,916.08.[8] The judgment also denied ABB's claims for reimbursement of workers' compensation benefits.[9]
Our appellate record has been supplemented with the trial court's May 31, 2007 final judgment, and Entergy has reurged its assignments of error raised pursuant to its underlying appeal.[10]

II. ANALYSIS
Louisiana Constitution Article V, § 8(B) requires that "[a] majority of the judges sitting in a case must concur to render judgment." In the instant case, four of the eleven judges would reverse the trial court's judgment, finding that the trial court erred in concluding that Entergy was not Rainey's statutory employer at the time of her fall; three judges would affirm the trial court's judgment on the basis that Entergy failed to establish the existence of a timely-executed, written addendum to its contract with ABB (or, alternatively, remand for the trial court to determine whether such an addendum was timely executed before Rainey's accident); one judge would remand the matter to the trial court to make a full and reasoned determination as to whether the statutory employer addendum was executed prior to the accident in question, and three judges would dismiss the appeal based on a finding that this court does not have jurisdiction to render a judgment. Accordingly, there is no executable majority judgment, and the effect is that the decision of the trial court stands. Parfait v. Transocean Offshore, Inc., 07-1915 (La.3/14/08), 980 So.2d 634, 636, and 639.

III. CONCLUSION
Accordingly, the trial court judgment stands, and appeal costs are assessed against Entergy Gulf States, Inc.
TRIAL COURT JUDGMENT STANDS.
KUHN, J., concurs and assigns reasons.
*740 WHIPPLE, J., concurs in the result and assigns additional reasons.
McDONALD, J., concurs for the reasons assigned by Judge KUHN.
WELCH, J., concurs for the reasons assigned by Judge WHIPPLE.
PETTIGREW, J., concurs with the results and assigns reasons.
PARRO, J., concurs in part and assigns reasons.
McCLENDON, J., dissents and assigns reasons.
GAIDRY, J., dissents for reasons assigned and would dismiss again.
GUIDRY, J., dissents for the reasons assigned by Judge GAIDRY.
PARRO, J., concurring.
I concur for the reasons assigned by Judge Kuhn. However, it is my position that the trial court judgments being reversed are those signed on November 2, 2005, and March 14, 2001.
WHIPPLE, J., concurring in the result.
I agree with the denial of the motion to dismiss and the denial, as moot, of the motion to supplement. I concur in the result occasioned by the per curiam, which effectively affirms the trial court's judgment, albeit on a different basis, given my concerns about this case.
In my view, the trial court committed legal error in concluding that the written contract contemplated by LSA-R.S. 23:1061(A)(3) must be signed by both parties. However, I am unable to find, on the record before us, that Entergy satisfied its burden of proving the existence of an authentic timely executed written addendum to its contract with ABB, or that it had been executed prior to Rainey's accident herein.
Pursuant to the Louisiana Code of Evidence, "[t]he preliminary determination by the court that evidence is admissible does not limit the right of a party to introduce evidence relevant to weight or credibility at trial." LSA-C.E. art. 104(D); see Rowe v. State Farm Mutual Automobile Insurance Company, 95-669 (La.App. 3rd Cir.3/6/96), 670 So.2d 718, 728 & n. 14, writ denied, 96-0824 (La.5/17/96), 673 So.2d 611. In the instant case, the circumstances surrounding the discovery of an undated addendum just days before the trial date are questionable at best. The trial court noted this issue in its reasons for judgment, stating that "there existed a purported written addendum to the original contract, stating that Entergy intended to be a statutory employer, even though there is some question as to the circumstances in which the addendum to the original contract was found." (Emphasis added). However, because the trial court ruled, albeit incorrectly, that the addendum did not meet the legal requirements of a written contract, it did not reach the issue of whether the addendum had in fact been executed prior to the accident in question.
Where one or more legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and if the record is otherwise complete, the appellate court is obligated to make its own independent de novo review of the record and determine a preponderance of the evidence. However, where the weight of the evidence is so nearly equal that a firsthand view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial. Salassi v. State, Department of Public Safety and Corrections, Administrative Hearing Section, 96-0321 (La.App. 1st Cir.11/15/96), 684 So.2d 1014, 1016.
*741 In the instant case, Entergy produced the addendum a mere two days before the second trial setting, after having denied its existence during discovery. Also, Richard Duplantier, Jr., counsel for Entergy throughout the first trial, testified by deposition that both in-house counsel for Entergy and in-house counsel for ABB supplied Duplantier with copies of the contracts, and that the copies supplied by both were the same. Notably, however, none of the contracts or addendums provided by Entergy or ABB to counsel contained the necessary language to support a statutory employer defense.
Moreover, it further appears that Entergy's in-house counsel also made efforts to determine whether there was an addendum containing the statutory employer language. At his request, Cara Carpenter, the Entergy employee responsible for filing contracts, searched for any addendum in the ABB file, but found no such addendum. Only later, shortly before the new trial date, did Carpenter suddenly discover the February 27, 1998 letter, on top of a "workin desk" or "working table" that was located outside of an employee's office at Entergy's offices. No reasonable explanation was given as to how the document came to be on that desk or where the document had been throughout the pendency of this suit.
Additionally, while the letter in question was allegedly signed by Ronald Beckman, vice-president of ABB, he admitted that he did not date the document. Moreover, he admittedly had no personal knowledge as to when the letter was signed, who actually dated the document, or whether the date written on the document was the date on which he signed it. Also, Michael Pennison, an Entergy procurement specialist, testified that Entergy used a computer program, the Contract Management Information Service, to internally track contracts and their status. According to Pennison, if Entergy had received a signed contract addendum from ABB, it would have been reflected in the "comments" or "scope of work" field of the program. However, the program did not indicate that a signed copy of the addendum was returned to Entergy. These facts all cast serious doubt on the reliability of the addendum and Entergy's assertion that it was signed prior to the accident in question.
The key issue in this case is the nature of the relationship between ABB and Entergy. On the record before us, I find that the ultimate result of this court's deliberations, as disclosed in the per curiam, is correct, inasmuch as Entergy failed to establish by a preponderance of the evidence that the addendum was signed by ABB and returned to Entergy before Rainey's accident.
Accordingly, I concur in the result reached by the per curiam which effectively affirms the trial court's ruling by allowing the trial court judgment to stand, but on different grounds, i.e., because the record does not establish or support a finding that the addendum was executed prior to the accident in question. Should the Louisiana Supreme Court or some other reviewing court disagree with this court's conclusion in the per curiam that the failure of a majority to render a decision mandates allowing the lower court decision to stand, I would remand to the trial court for a full and reasoned determination of this critical issue, given the obvious and important credibility issues that must be resolved.
Thus, I respectfully concur in the result only.
KUHN, J., concurring.
Because there is no concurring majority, we are unable to render judgment in *742 this case. However, addressing the merits of defendant's appeal, I find that the trial court erred in concluding that Entergy was not Rainey's statutory employer at the time of her fall.
Entergy asserts the trial court erred in not finding it immune from tort liability, asserting it was Rainey's statutory employer and that a valid written contract existed between Entergy and ABB recognizing this relationship. As such, Entergy contends the sole remedy available for the injuries sustained by Rainey is workers' compensation benefits pursuant to La. R.S. 23:1032.[1] Because Entergy seeks to avail itself of tort immunity under La. R.S. 23:1032, Entergy bears the burden of proving entitlement to the immunity. Weber v. State, 93-0062 (La.4/11/94), 635 So.2d 188, 191. Moreover, the statutory scheme that provides for a statutory employer defense must be strictly construed against the party who seeks the immunity. Id. at 193.
Louisiana Revised Statutes 23:1061 A(1) provides that when a "`principal'... undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as a `contractor', for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032...." Under La. R.S. 23:1061 A(1), "work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." Louisiana Revised Statutes 23:1061 A(2) recognizes that "[a] statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer."
Prior to 1997, La. R.S. 23:1061 did not require a written contract to exist between the "principal" and "contractor" in order to establish a statutory employer relationship. In 1997, the Louisiana legislature amended La. R.S. 23:1061 to add subsection A(3), which provides, in part:
Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer. (Underscoring added.)
See 1997 La. Acts, No. 315, § 1. In that same subsection, the legislature also added a rebuttable presumption of a statutory employer relationship between the principal *743 and the contractor's employees when a written contract exists between a principal and a contractor that recognizes the principal as a statutory employer. This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services. La. R.S. 23:1061 A(3).
During the August 1, 2005 trial on Entergy's statutory employer defense, Rainey stipulated that the work performed by her and ABB at Willow Glen on February 15, 1999 was an integral part of Entergy's trade, business, or occupation. Therefore, the dispute in this appeal is whether a valid written contract, which recognizes Entergy as Rainey's statutory employer, existed between Entergy and ABB prior to the February 15, 1999 accident.
Entergy notes that in 1992, it and ABB entered into a "General Operations Agreement for Contracted Services," bearing contract no. FHA00166 ("General Operations Agreement").[2] Entergy contends the General Operations Agreement met the necessary requirements then existing to allow Entergy to be considered the statutory employer of ABB's employees.[3] Following the 1997 amendment to La. R.S. 23:1061, which specifically requires the principal and contractor to enter into a written contract that recognizes the principal as a statutory employer, Entergy sent ABB a written addendum to the General Operations Agreement.
The addendum, which was in the form of a letter and dated February 27, 1998, specifically references the parties' prior agreement and provides that "[t]he following proposed amendment to the above-referenced agreement includes our intention to continue under the statutory employment relationship in accordance with the new law" and requests that ABB "execute this letter in order to amend Agreement Number FHA00166." The addendum further provides:
The parties mutually agree that it is their intention to recognize Entergy Corporation and any of its affiliated and associated companies that are parties to the above-referenced agreement as the statutory employers of the Contractor's employees, whether direct employees or statutory employees of the Contractor, *744 in accordance with Louisiana Revised Statute 23:1061 while Contractor's employees are providing work hereunder.
The parties recognize that this amendment is not intended to change the relationship between the parties and that it has always been the intent of the parties that Entergy Corporation and any of its affiliated associated companies that are parties to the above-referenced agreement would be entitled to raise the "statutory employer" defense, where applicable, to personal injury suits by an employee of the Contractor for injuries suffered while performing work under the above-referenced agreement.
The addendum is on Entergy letterhead and the typewritten name of Entergy employee Bobbie Babin appears at the bottom of the addendum. Entergy mailed the addendum to ABB. ABB's Vice-President of Construction, Ronald Beckham, executed the written addendum and, by cover letter dated March 10, 1998, mailed the agreement back to Entergy. Entergy maintains this addendum is sufficient to meet the statutory requirements of La. R.S. 23:1061 A(3) necessary to establish it as Rainey's statutory employer.
Entergy notes that the trial court denied its statutory employer defense because no Entergy representative had signed the addendum. Entergy avers there is no legal requirement that an individual actually affix his or her signature on a document in order for a valid contract to exist. Relying on La. Civ.Code art. 2045, Entergy points out that the interpretation of a contract is the determination of the common intent of the parties and urges that it clearly manifested its intent to be bound by the addendum when it prepared and mailed the addendum to ABB for execution. Insofar as Rainey stipulated that ABB's work at Willow Glen was an integral or essential part of Entergy's ability to generate its goods, products, or services, Entergy maintains it is entitled to a judgment decreeing that it was Rainey's statutory employer.
In opposition, plaintiffs assert that Entergy failed to prove a required "written contract" between itself and ABB in order to create a statutory employer relationship as required by La. R.S. 23:1061 A(3). Plaintiffs note that Paragraph 38(d) of the General Operations Agreement between Entergy and ABB required that any alterations or amendments to the contract be "by express written agreement by the parties." Plaintiffs contend that Louisiana jurisprudence has long held that a "written contract" is a document setting forth the intent of the parties and must be signed by both parties. Moreover, although they do not dispute that the typewritten name "Bobbie Babin" appears at the bottom of the addendum, plaintiffs suggest that ambiguity exists as to whether the name was placed there in anticipation of a signature above it or electronically placed there to represent Babin's actual signature. Because an Entergy representative did not physically sign the addendum at issue, plaintiffs urge that Entergy did not meet the statutory requirements to qualify as Rainey's statutory employer.
In support of their assertion, plaintiffs cite Big `A' Sand & Gravel Co., Inc. v. Bay Sand and Gravel Co., Inc., 282 So.2d 837 (La.App. 1st Cir.), writ denied, 284 So.2d 773 (La.1973), wherein this court found that the parties never effected a contract because they had no intention of being bound "until mutually satisfactory agreements were struck, reduced to writing, and signed by all parties." 282 So.2d at 842. In so finding, this court relied on Fredericks v. Fasnacht, 30 La.Ann. 117 (1878), in which the supreme court stated:
It is elementary in our law, that where the negotiations contemplate and provide that there shall be a contract in *745 writing, neither party is bound until the writing is perfected and signed. The distinction is manifest between those cases in which there is a complete verbal contract, which the law does not require to be reduced to writing, and a subsequent agreement that it shall be reduced to writing, and those in which, as in this case, it is part of the bargain that the contract shall be reduced to writing. In the first class of cases the original verbal contract is in no manner impaired by the failure to carry out the subsequent agreement to put it in writing. In the second class of cases, the final consent is suspended; the contract is inchoate, incomplete, and it cannot be enforced until it is signed by all the parties.
This court also cited Breaux Bros. Const. Co. v. Associated Contractors, Inc., 226 La. 720, 729, 77 So.2d 17, 20 (1954), a case in which the supreme court reasoned:
Since the parties in the instant case intended from the beginning to reduce their negotiations to a written contract, neither the plaintiff nor the defendant was bound until the contract was reduced to writing and signed by them. Therefore, even if all of the terms of the alleged contract between plaintiff and defendant had been verbally agreed upon, no valid contract would have existed between the parties because this case falls within the second class of cases discussed in Fredericks v. Fasnacht, supra, and therefore in this case the final consent of the parties was suspended until such time as the contract should be reduced to writing and signed by all the parties.
Big `A' Sand & Gravel Co., Inc., 282 So.2d at 843.
Based on these cases, plaintiffs assert that since both La. R.S. 23:1061 A(3) and the General Operations Agreement require a "written contract," the addendum is inchoate, incomplete, and unenforceable until signed by both ABB and Entergy. I disagree.
Louisiana Civil Code article 1927 provides:
A contract is formed by the consent of the parties established through offer and acceptance.
Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.
Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made. (Underscoring added.)
While La. R.S. 23:1061A(3) must be strictly construed and requires a "written contract ... which recognizes the principal as a statutory employer," it does not require that both parties affix a handwritten signature to the agreement. (Underscoring added.) See Fleming v. JE Merit Constructors, Inc., 07-0926 (La. App. 1st Cir.3/29/08), 985 So.2d 141 (wherein this court found that in the absence of a statute prescribing the method of affixing a signature, it may be written by hand, printed, stamped, typewritten, engraved, or provided by various other means). Thus, the addendum is valid because it was signed by both ABB and Bobbie Babin.
Moreover, the addendum is valid based on ABB's signature alone. If the legislature intended a writing and signature by both parties, it would have expressly so provided. See e.g., La. R.S. 6:1122 (providing that a debtor cannot assert an action on a credit agreement "unless the agreement is in writing ... and is signed *746 by the creditor and the debtor") and La. R.S. 6:705 A (requiring that articles of incorporation be "written in the English language and shall be signed by each incorporator..."). (Underscoring added.) In contrast, see also La. R.S. 9:4201 (setting forth that an agreement to arbitrate must be an "agreement in writing between two or more persons," but does not expressly state that the agreement must be signed. As such, a written agreement to arbitrate under La. R.S. 9:4201 does not necessarily require that the contract be signed insofar as "[s]igning is an additional requirement beyond writing." Hurley v. Fox, 520 So.2d 467, 469 (La.App. 4th Cir. 1988), on remand, 559 So.2d 887, 891 (La. App. 4th Cir.1990)). Accordingly, although La. R.S. 23:1061 A(3) prescribes the agreement to be written, it does not require both parties to sign the agreement.[4]
While plaintiffs urge that well-settled jurisprudence recognizes that a binding contract does not exist until the written agreement is confected and signed by both parties, this rule generally applies to the preparation and execution of a written agreement subsequent to the contracting parties' oral negotiations and understandings. Dyer v. Varnell, 121 So.2d 598, 599 (La.App. 2d Cir.1960). The rationale behind the well-settled jurisprudence is inapposite herein because the addendum was prompted by the amendments to La. R.S. 23:1061, rather than by prior negotiations between Entergy and ABB, wherein the parties thereafter contemplated a written contract.[5]
Nevertheless, when a written contract is contemplated or required, the party that proposes the contract may be bound if the contract was prepared under its direction and the contract itself clearly indicates the drafter's intent to be bound once the other party assents thereto.[6] For instance, in Finishers Drywall, Inc. v. B & G Realty, Inc., 516 So.2d 420 (La.App. 1st Cir.1987), a building owner alleged that an arbitration clause in a contract's addendum was not applicable because he had not signed the agreement and only the contractor's representative's signature appeared on the addendum. This court disagreed, reasoning that the building owner prepared the contract documents and sent them to the contractor for his signature. Moreover, the building owner "offered the addendum, with a signature space only for the [contractor], and [the contractor] accepted, as is evidenced by the signature of its representative thereon." Id. at 422. Also see Dyer, 121 So.2d at 599 (wherein the court found the refusal of one lessor to sign a *747 written instrument of lease that was prepared at lessors' direction did not invalidate the lease that had been presented to and executed by lessee; the tender to and signature by lessee represented an acceptance of the proposed lease).
In this case, the only formality required by law is that the contract be in writing. The addendum prepared by Entergy and forwarded to ABB met the requisite statutory standard. The addendum specifically requested ABB to "execute this letter in order to amend Agreement Number FHA00166, dated 08-Dec-92." The document only provided a signature space for ABB's representative and there is no indication on the document itself that an Entergy representative was to sign the document in the same manner as ABB's representative. Although ABB was required to sign the document, it was not required that Entergy sign the document insofar as the addendum itself, which was prepared under Entergy's direction, reflected Entergy's clear intent to be bound by the agreement once ABB assented to it. See La. C.C. art. 1927. Accordingly, the agreement at issue meets the requisites of La. R.S. 23:1061 A(3).
Plaintiffs maintain that even if the February 27, 1998 addendum met the requirements of La. R.S. 23:1061 A(3), the lack of credibility and reliability of the document cannot be overlooked. Although the addendum itself was admitted into evidence during the trial without objection from Rainey's counsel, plaintiffs now challenge the addendum on the basis that it was discovered under highly suspicious circumstances, i.e., that it was fraudulent.
Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. La. C.C. art. 1953. Fraud is never presumed, and the burden rests upon the person alleging fraud to prove it by a preponderance of the evidence. Bass v. Coupel, 93-1270 (La.App. 1st Cir.6/23/95), 671 So.2d 344, 353, writ denied, 95-3094 (La.3/15/96), 669 So.2d 426; see La. C.C. art. 1957. Circumstantial evidence, including highly suspicious facts and circumstances surrounding a transaction, may be considered in determining whether fraud has been committed. Sun Drilling Products Corp. v. Rayborn, 00-1884, p. 16 (La.App. 4th Cir.10/3/01), 798 So.2d 1141, 1153. writ denied, 01-2939 (La.12/5/02), 807 So.2d 840, see La. C.C. art. 1957.
Plaintiffs contend that from the onset of this litigation, Entergy denied the existence of any contract, addendum, or other evidence to support the statutory employer defense, despite counsel's request to produce any such documents. Plaintiffs point out that two days before trial, Entergy allegedly found the document on a desk at Entergy's office. Moreover, plaintiffs note that no evidence was presented to show the exact date on which ABB signed the addendum, insofar as the ABB representative who signed the letter admittedly was not the same person who dated it. Plaintiffs also note that Entergy's tracking software was unable to show when it received the addendum from ABB.
In support of their argument, plaintiffs cite Succession of Sturgis, 516 So.2d 1293 (La.App. 2d Cir. 1987), wherein highly suspicious circumstances surrounded the discovery of a decedent's alleged second will following his death. Therein, one of the decedent's nieces, who was at the decedent's home following his death, requested that she be allowed to take a framed, family photograph from the house. Prior to her return home to Wyoming, the niece, without being so requested, removed the photograph from its frame, where she discovered *748 the alleged second will. The trial court concluded that someone placed the second will in a place where it would be "accidentally discovered," and that it was discovered by design. Moreover, the trial court determined that the second will was a forgery. The appellate court found no manifest error in the trial court's evaluation surrounding the discovery of the second will and no manifest error in the trial court's interpretation of expert witness testimony to determine that the second will was a forgery.
The Sturgis case is not analogous to the present case. First, it is undisputed that Ronald Beckham, ABB's Vice President of Construction, signed the February 27, 1998 addendum at issue. Although Mr. Beckham testified that he did not personally date the addendum, he testified that, in accordance with standard operational procedure, an ABB representative would have dated the addendum no more than one day prior to his signing it. Nevertheless, the evidence further shows that ABB tendered the addendum to Entergy on March 10, 1998. Therefore, the fact that Beckham may not have signed the addendum on the date written on the document really is of no moment, since the evidence demonstrates that the signed document was mailed back to Entergy nearly a year prior to Rainey's accident. Although the addendum was found shortly before trial and despite the inability of Entergy's tracking software to indicate when the addendum was received, these factual circumstances do not affect the validity of the document itself. Nor are there any facts indicating that Entergy and ABB colluded to produce a forged document. Thus, based on a de novo review of the evidence, I would conclude it is insufficient to warrant a finding that the addendum was confected as a result of fraud.
Accordingly, the February 27, 1998 addendum between Entergy and ABB, specifically designating Entergy as ABB's employees' statutory employer, is valid. Since Rainey stipulated that the work she performed at Entergy's facility was essential to Entergy's operations, the exclusive remedy available for Rainey's accident at Entergy's Willow Glen facility is under the Louisiana Workers' Compensation Act. The trial court erred in concluding that Entergy was not Rainey's statutory employer at the time of her fall.
For these reasons, I would reverse that portion of the May 31, 2007 judgment, which "denies" Entergy's affirmative defense "of Vera Rainey's status as Entergy's statutory employee" and vacate the remaining portions of the appealed judgment. Accordingly, I would render a judgment dismissing the claims of James A. McAllister, Joanne Mays, and Leonard A. Cardenas against Entergy Gulf States, Inc.
GAIDRY, J., dissenting.
I respectfully dissent from the court's per curiam opinion, on the grounds that we have no jurisdiction to reach the merits of Entergy's appeal, as I articulated in my dissenting opinion on the plaintiffs' motion to dismiss the appeal.
PETTIGREW, J., concurring.
I agree with the Honorable Judge Gaidry that we have no jurisdiction to reach the merits of Entergy's appeal, as expressed and articulated in his dissenting opinion on the plaintiff's motion to dismiss the appeal. However, the majority of this court found otherwise; and, thus, I feel compelled to address the merits. I find no legal or manifest error on the part of the trial court and would affirm the judgment of the trial court.
*749 McCLENDON, J., dissents and assigns reasons.
In the interest of justice and a party's right to appeal, I agreed with the denial of the motion to dismiss the appeal on jurisdictional grounds that was handed down separately. I dissent from the holding on the merits in this case, and agree with Judge Kuhn's analysis and conclusion that Entergy was Rainey's statutory employer.
NOTES
[1] The Hon. Jefferson D. Hughes, III, J., recused himself from consideration of this matter.
[2] Rainey also sued Mike Case, an employee of Entergy, whom she alleged was responsible for the safety of the premises where she fell. The trial court later dismissed all claims against Mike Case with prejudice, and the dismissal of these claims is not challenged in this appeal.
[3] The original trial date was scheduled to begin on July 5, 2000, but was continued until August 31, 2000. On August 29, 2000, Entergy filed its motion for leave to file the supplemental and amending answer to allege the statutory employer defense, but the trial court summarily denied Entergy's motion. On August 30, 2000, Rainey requested that the trial be continued without date because of illness. The trial court granted Rainey's motion. Subsequently, Entergy re-urged its motion, but the trial court again denied it, reasoning that the continuance did not open the case for further pleadings or discovery.
[4] Specifically, the trial court awarded the following amounts to Rainey;

a. General Damages $ 400,000.00
b. Past Medical Expenses $ 53,994.00
c. Future Medical $ 30,000.00
d. Past Lost Wages $ 55,994.00
e. Future Lost Earnings $ 300,000.00

[5] At times, Rainey's son is identified as "McAllister" and at others as "McCallister." Consistent with our prior opinion, we utilize the former spelling.
[6] On February 12, 2001, Rainey executed a last will and testament by notarial act in which she designated Craig Brigalia as a testamentary executor of her succession and bequeathed her "lawsuit" to him in a particular legacy.
[7] More specifically, this court instructed the trial court to: (1) issue citations to McAllister and Mays ordering them to either assert claims for rights of action in this case or renounce the claims; (2) hold an evidentiary hearing on Entergy's exception and render a judgment on the exception if either McAllister or Mays, or both of them, asserted a right of action; and (3) thereafter, consider and take the appropriate action on Brigalia's motion to intervene.
[8] Like the March 14, 2001 judgment, the May 31, 2007 judgment awarded plaintiffs judicial interest and court costs.
[9] After the new judgment was signed, Entergy filed a motion for new trial, which the trial court denied.
[10] Entergy asserts the trial court erred in: 1) finding that a written contract did not exist between Entergy and ABB recognizing Entergy as a statutory employer; 2) finding that Entergy was not immune from tort liability as Rainey's statutory employer; 3) denying Entergy's Motion for New Trial; 4) finding that the stairway and lighting existing at the time of Rainey's accident constituted a dangerous condition that would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances; 5) finding that Entergy knew or should have known that a vice or defect existed in the stairway and/or lighting at the time of Rainey's accident; 6) finding Entergy solely liable for Rainey's injuries and failing to assign any degree of fault to either Rainey's employer, ABB, which contractually assumed responsibility for Rainey's safety while performing work at Willow Glen, or to Rainey herself; 7) finding that the stairway and/or lighting were the cause-in-fact of Rainey's injuries; 8) allowing Rainey's experts, Nick Cammarata and John Laughlin, to provide expert opinions as to the cause of Rainey's accident; 9) denying Entergy's right to trial by jury for failing to timely post the jury bond after the trial was continued twice; and 10) awarding excessive and unsupported damages.
[1] Louisiana Revised Statutes 23:1032 A(1)(a) provides:

Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.
[2] Entergy entered the contract in its former name, Gulf States Utilities Company.
[3] At the time the contract was entered into between the parties, La. R.S. 23:1061 A provided:

When any person, in this Section referred to as "principal", undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person, in this Section referred to as "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.
[4] Additionally, the General Operations Agreement between the parties also requires any amendment be by "express written agreement," but it likewise does not require that both parties sign the agreement.
[5] Entergy contends that prior to the amendments to the statute, Entergy met the statutory requisites that afforded Entergy statutory employer immunity for work being performed at its facility by ABB's employees. Entergy's letter indicates that ABB, prior to the adoption of the amended statute, agreed to this arrangement. There was no evidence or testimony presented at trial to indicate otherwise. As such, the letter was not prompted to memorialize prior negotiations between Entergy and ABB, but was transmitted so that the parties could comport with the requisites of the amended statute.
[6] Moreover, the Louisiana Supreme Court, in relying on former Louisiana Civil Code Articles 1802 and 1811 of the 1870 code, has stated, "One who proposes the contract is bound if the offer is made in terms, whether by words, actions, silence or inaction, which evince a design to give the other party the right of concluding by assent, and the other party timely assents." Knecht v. Bd. of Trustees for State Colleges and Universities and Northwestern State Univ., 591 So.2d 690, 694 (La.1991).