## No. 5427.

LOUISA FREDERICKS, TUTRIX, vs. ROBERT FASNACHT.

| 30 | 117 |
| 52 | 427 |

When it clearly appears from the evidence that the intent of parties was to form a written contract, neither party will be bound until the contract has been reduced to writing, and signed by both. No alleged verbal agreement, in such case, can be invoked by either party against the other.

APPEAL from the Fifth District Court, parish of Orleans.   *Cullom, J.*

*J. H. Grover* for plaintiff and appellee.

*A. & W. Voorhies* for defendant.

The opinion of the court was delivered by

MARR, J. This suit was brought by Louisa Fredericks, tutrix, and George Waters, her husband, co-tutor, to recover damages for injuries to real property, alleged to have been leased to Robert Fasnacht, the defendant.

Defendant denies that he leased the property, or received, or used, or occupied or injured it.

The proof is that one Peterson, agent for Mrs. Waters before her marriage to Waters, negotiated with defendant for the lease of the property. Peterson says : "I always thought, and was pretty sure the lease was consummated by him for his father. He never occupied it ; it was the father always occupied it." In another place, referring to the fact that defendant had paid three months rent, he says : "He did not say he was paying for his father ; but he made me understand when he took the lease it was for his father, when the verbal lease was agreed upon. We had a lease drawn up which was never signed ; but it was understood it was for his father." Again, when asked directly, if defendant " did not tell him, at the time, that he was leasing for his father," he answers : " That is what he made me understand." Pressed by the repetition of the question, he says : "I can not say he told me distinctly it was for his father ; but he left the impression on my mind that it was for his father."

Defendant testifies that in April, 1871, his father requested him to lease the property for him, for a term beginning first of May ; that his father told him he wanted to occupy it with his family, and would give fifty dollars a month for it.    That all he did about the matter was for account, and at the request of his father ; that he had advanced the money and made payments on account of the rent, which he always charged to his father's account at the time ; and that he never had any idea of becoming responsible for the rent.

The proof is that Samuel Fasnacht, the father, took possession about the first of May, and occupied the premises.    That when Peterson and his principal, at different times, demanded the rent of defendant, he always referred them to his father ; and that defendant did not live on the premises.

Peterson testifies that it was a part of the bargain, at the time he talked with defendant about leasing the property, that the lease should be put in writing ; and that Peterson drew up a lease which defendant did not sign.    When asked if defendant did not refuse to sign, he says: "He did not do it."    When asked, "Did he not say he would not," he answers : "He delayed from time to time, and it was never signed.    He said the old man would sign the lease ; that was the way."

Defendant, when asked, "Did Peterson ask you to sign the lease?" answers : "Yes, I told him wait until the old man came, that I acted for him."

Mrs. Waters lived in the immediate neighborhood, and occasionally visited Mrs. Fasnacht.    She saw Samuel Fasnacht committing depredations on the property ; and complained to Robert Fasnacht, who said he could not do any thing with his father.    Peterson says he informed Mrs. Waters of his negotiations with Robert Fasnacht.    It seems that Robert was sued for the rent ; that when the papers were served he handed them to his father, telling him that was the father's business, not his ; and that Samuel Fasnacht settled the suit with Mrs. Waters, without the presence or interference of Robert Fasnacht.

It also appears that after the marriage with Waters, not earlier than August, possibly as late as October, 1871, a lease, made out in the name of Robert Fasnacht as lessee, was signed by Mrs. Waters and Samuel Fasnacht professing to act for his son.    This lease was ante-dated first of May, corresponding with the beginning of the term.    There is no proof that Samuel Fasnacht had any authority to sign or make any such contract for his son ; and Robert Fasnacht testifies that he never gave his father any such authority ; that he knew nothing of this lease until long after it was signed ; and that he had never seen it until it was produced in court on the trial of this case.

Apart from the conduct and declarations of Robert Fasnacht, which

Fredericks vs. Fasnacht.

are consistent throughout this entire transaction, it is manifest that there was no contract of lease assented to by him, as lessee of this property. It is elementary in our law, that where the negotiations contemplate and provide that there shall be a contract in writing, neither party is bound until the writing is perfected and signed. The distinction is manifest between those cases in which there is a complete verbal contract, which the law does not require to be reduced to writing, and a subsequent agreement that it shall be reduced to writing, and those in which, as in this case, it is a part of the bargain that the contract shall be reduced to writing. In the first class of cases the original verbal contract is in no manner impaired by the failure to carry out the subsequent agreement to put it in writing. In the second class of cases, the final consent is suspended ; the contract is incohate, incomplete, and it can not be enforced until it is signed by all the parties. Villéré vs. Brognier, 3 Martin, 349; Des Boulets vs. Gravier, 1 N. S. 421, 422; Blocker vs. Tillman, 4 La. 80.

This case illustrates the wisdom of the rule. If Peterson understood from the negotiations with Robert Fasnacht, that Robert Fasnacht was contracting for himself, and not as the representative of his father, it is plain that Robert Fasnacht had no such understanding ; and when Peterson asked Robert Fasnacht to sign the lease, which he says the bargain required, and Robert told him to wait until his father came, that he was acting for his father, fair warning was given that Robert did not intend to take upon himself the obligations of lessee of the property which he had negotiated for as the representative of his father, Peterson might and should have brought the business to a conclusion by refusing to deliver the property until the bargain was completed by a lease in writing, which would have left no room for dispute as to who was the real lessee. There was ample time for this ; because, as the proof shows, the negotiations between Peterson and Robert Fasnacht were in April, about a month before the beginning of the term.

The proof shows that Samuel Fasnacht did abuse the property ; and he might well have been held liable for damages. There is no pretense that Robert Fasnacht did any of the wrongs complained of ; and as he was not bound by any contract as lessee, and did not live upon or occupy the property, the court below erred in holding him liable, and in condemning him in damages.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed ; and that there be judgment in favor of Robert Fasnacht, defendant and appellant, against Mrs. Louisa Federicks, tutrix, wife of George Waters, and George Waters co-tutor, plaintiffs and appellees, rejecting their demand, with costs in both courts.