KNOLL, Justice.
 
 *
 

 | jThis writ concerns whether the affirmative defense of statutory employer tort immunity can be urged when the written contract providing for this relationship was not hand-signed by the principal, but was hand-signed only by the contractor.
 

 Plaintiff, Vera Rainey, an employee of the contractor, ABB C-E Services, Inc. (ABB) was injured in the course of her employment at the business of the principal, Entergy Gulf States, Inc. (Entergy) at its Willow Glen power plant. She filed a tort suit against Entergy, which was eventually met with the affirmative defense of statutory employer tort immunity. After a complex and tortuous procedural history, a bench trial was held wherein the trial court denied Entergy’s affirmative defense. The Court of Appeal sitting
 
 en banc
 
 with one judge recused, reversed the trial court in a 6-5 decision. We granted plaintiffs
 
 [1]
 
 writ primarily to address the
 
 *218
 
 contract issue.
 
 [2]
 
 The plaintiff also urges the composition of the
 
 en banc
 
 court was constitutionally flawed, which we will address preliminarily to the contract issue. For reasons set forth below, we find the
 
 en banc
 
 court majority was constitutionally composed, and finding no error in the Court of Appeal’s determination that a lawful and enforceable contract existed between Entergy and ABB, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 In January 1999, ABB began a construction project for Entergy at Entergy’s Willow Glen power plant in St. Gabriel, Louisiana. This work was performed pursuant to a General Operations Agreement for Contracted Services (Agreement) that was executed between these two entities in 1992. On February 15, 1999, Vera Rainey, a journeyman boilermaker working for ABB at Willow Glen, fell down a stairway on the jobsite and was injured. Rainey filed a tort suit for damages against Entergy, alleging Entergy was at fault for,
 
 inter alia,
 
 using a substandard staircase and failing to provide adequate lighting in the work area.
 

 This complex and lengthy procedural battle commenced when Entergy did not assert the statutory employer defense in its answer to Rainey’s petition for damages. Approximately ten and a half months later, two days prior to the scheduled trial date of August 31, 2000, Entergy filed a motion for leave of court to file a supplemental and amending answer to allege the statutory employer defense. The basis for Entergy’s assertion of the statutory employer defense was an addendum to the Agreement, which stated, in pertinent part, “[t]he parties mutually agree that it is their intention to recognize En-tergy Corporation ... as the statutory employers [sic] of the Contractor’s [ABB] employees ... in accordance with Louisiana Revised Statute | <¡23:1061 while Contractor’s employees are providing work hereunder.” The trial court denied the motion.
 

 Due to plaintiffs illness, the trial date was continued until December 6, 2000. After a bench-trial, the trial court awarded damages to Rainey. On appeal, finding the trial court abused its discretion by denying Entergy’s motion to amend to assert the statutory employer defense, the judgment was reversed and the case remanded to the trial court for a trial on the merits of the statutory employer issue only.
 
 Rainey v. Entergy Gulf States, Inc.,
 
 01-2414 (La. Ct.App. 1 Cir. 11/8/02), 840 So.2d 586.
 

 The trial of the statutory employer defense was held on August 1, 2005. At issue was whether an addendum to the Agreement validly provided in writing a statutory employer relationship between Entergy and ABB. This initial Agreement was executed in 1992. In 1997, the Louisiana Legislature amended La. Rev.Stat. 23:1061 to require a written contract between the principal and the contractor recognizing the principal as a statutory employer in order for a statutory employer relationship to exist between the principal and the contractor’s employees. The statute provided, in relevant part:
 

 Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not ex
 
 *219
 
 ist between the principal and the contractor’s employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee’s immediate employer or his statutory employer, which recognizes the principal as a statutory employer....
 

 La. Rev.Stat. 23:1061 A(3).
 

 Entergy sent a letter to ABB dated February 27, 1998, specifically referencing the Agreement and proposing an amendment to the Agreement to comply with the then recently amended La. Rev.Stat. 23:1061 requiring a written contract to recognize the principal as the statutory employer of the contractor’s employees. This letter stated, in pertinent part:
 

 |/The following proposed amendment to the above-referenced agreement includes our intention to continue the statutory employment relationship in accordance with the new law. We believe that the following amendment is for the mutual benefit of both Entergy and
 
 ABB
 
 [Contractor’s name], [sic] Thus, we are requesting that you execute this letter in order to amend Agreement Number
 
 FHA00166,
 
 dated
 
 08-Dec-92
 
 to include the following language:
 

 The parties mutually agree that it is their intention to recognize Entergy Corporation and any of its affiliated and associated companies that are parties to the above-referenced agreement as the statutory employers of the Contractor’s employees, whether direct employees or statutory employees of the Contractor, in accordance with Louisiana Revised Statute 23:1061 while Contractor’s employees are providing Work hereunder.
 

 The parties recognize that this amendment is not intended to change the relationship between the parties and that it has always been the intent of the parties that Entergy Corporation and any of its affiliated associated companies that are parties to the above-referenced agreement would be entitled to raise the “statutory employer” defense, where applicable, to personal injury suits by an employee of the Contractor for injuries suffered while performing work under the above-referenced Agreement.
 

 The letter concludes by requesting a fully executed copy be returned to Entergy no later than March 20, 1998. After the complimentary close of “very truly yours” appears the typewritten name of Bobbie S. Babin. Underneath that along the left margin appears “Agreed Upon by Contractor” with the signature of R.I. Beckman whose title is V.P. [of] Construction and the date of March 10,1998.
 

 At trial of the statutory employer issue, plaintiff vehemently opposed the validity of the addendum, questioning the circumstances of Entergy producing the addendum two days before the original scheduled trial date of August 31, 2000. Notwithstanding this argument, plaintiff did not allege fraud or bad faith. Testimony and evidence introduced at the trial of the statutory employer issue showed in response to plaintiffs first set of interrogatories and request for production of documents, Entergy responded it had not specifically alleged it was plaintiffs | Bstatutory employer and was unaware of any facts which would support an immunity defense, but with the caveat that if such facts became available it would amend its pleadings and supplement its response. Subsequently, on August 29, 2000, Entergy supplemented its answers to plaintiffs interrogatories with the addendum to the Agreement.
 

 Entergy’s in-house counsel, John Bray-mer, testified when he received Rainey’s suit, he sent a demand letter to ABB for
 
 *220
 
 defense and indemnity. A copy of his letter to ABB dated June 25, 1999 was admitted into evidence. ABB responded they would assume the defense and indemnity of Entergy and that Richard Duplan-tier of Galloway, Johnson, Thompkins and Burr had been retained to represent En-tergy. Braymer further testified although Duplantier was responding to discovery propounded by Rainey’s counsel, Duplantier failed to keep Entergy informed, through Braymer, regarding the status of the statutory employer defense or the discovery responses submitted with regard to a potential statutory employer defense. Admitted into evidence was a letter from Braymer to Duplantier dated May 3, 2000, wherein Braymer requested information regarding efforts to develop defenses, including statutory employer immunity. Duplantier’s June 19, 2000 letter in response, although addressing potential defenses and possible third party fault, did not make reference to statutory employer defense.
 

 Braymer sent a letter to Duplantier and his associate, John E.W. Baay, II, asking if they were anticipating filing a motion for summary judgment claiming Rainey was the statutory employee of Entergy and, if not, their reasons for not doing so. Messrs. Duplantier and Baay replied on July
 
 27,
 
 2000, stating they were not planning on such a motion because, based on their review of the Agreement between Entergy and ABB, such a motion would be denied. Braymer testified upon receiving |fithis letter on August 1, 2000, he was “shocked” and immediately contacted the appropriate Entergy employees to ascertain whether the Statutory Employer Addendum existed and, if so, for it to be produced.
 

 Braymer testified Michael G. Pennison located an indication in Entergy’s contract database that Entergy had received the statutory employer Addendum back from ABB.
 
 [3]
 
 Cara Carpenter, an Entergy employee assigned to locate the Addendum, responded to Braymer on August 24, 2000, that she could not find any such Addendum. Braymer testified that in response to this communication, he responded with an e-mail questioning whether it had been misplaced or misfiled. He testified there are thousands of contracts in that area of the company and there was a possibility it had been misplaced or misfiled. On August 25, 2000, Carpenter sent an e-mail to Braymer that she was faxing the Addendum to him. Carpenter’s affidavit was attached to Entergy’s motion to file a supplemental and amending answer. In this affidavit, Carpenter swears she was unaware of the existence of a second folder containing the Addendum until August 25, 2000, when she discovered the folder. In Carpenter’s deposition testimony she stated the Addendum was located in this second folder. She found the folder on top of a “working” desk outside of Brian Lawson’s office, about three cubicles down the aisle from the filing cabinet where the ABB contracts were supposed to be kept.
 

 In rendering its judgment denying En-tergy’s statutory employer defense, the trial court declared it did “not dispute the fact that there existed a purported written addendum to the original” Agreement, “even though there is some question as to the circumstances in which the addendum to the original contract was found.” Notwithstanding, the court found the addendum was not in the proper form as 17statutorily required because “[ujnder Louisiana jurisprudence, a ‘written con
 
 *221
 
 tract’ must be signed by both parties in order to be perfected.”
 

 Entergy’s appeal was considered by the Court of Appeal sitting
 
 en banc.
 
 Eleven of the twelve judges of the First Circuit Court of Appeal participated as Judge Hughes was recused. According to the court’s
 
 per curiam
 
 opinion, four of the judges would have reversed the trial court, finding the trial court erred in concluding Entergy was not Rainey’s statutory employer; three of the judges would have affirmed the trial court’s judgment on the basis Entergy failed to establish the existence of a timely-executed, written addendum (or, alternatively, remand for the trial court to determine whether such an addendum was timely executed before Rainey’s accident); one judge would have remanded for the trial court. to make a full and reasoned determination as to whether the addendum was executed prior to the accident; and three judges would have dismissed the appeal, finding the Court of Appeal did not have jurisdiction.
 
 [4]
 

 Rainey v. Entergy Gulf States, Inc.,
 
 06-816, pp. 6-7 (La. Ct.App. 1 Cir. 8/15/08), 993 So.2d 735, 739. Relying upon
 
 Parfait v. Transocean Offshore, Inc.,
 
 07-1915 (La.3/14/08), 980 So.2d 634, 636, and 639, the court held the effect of it not having an executable majority made the trial court’s decision stand.
 

 Simultaneous with that decision, the
 
 en banc
 
 court denied a motion by plaintiff to dismiss the appeal. Writs were taken to this court from both of these decisions. We denied plaintiffs writ from the appellate court’s decision denying the motion to dismiss Entergy’s appeal.
 
 Rainey v. Entergy Gulf States, Inc.,
 
 08-2209 (La.12/12/08), 996 So.2d 1118. Because we denied that writ, we granted Entergy’s writ and remanded the matter to the Court of Appeal for the judges who found the appellate court did not have jurisdiction to reach the merits upon remand, and for the Court of Appeal to reach an executable majority judgment.
 
 Rainey v. Entergy Gulf States, Inc.,
 
 08-2233, p. 2 (La.12/12/08), 996 So.2d 1058, 1059.
 

 On remand, in a 6-5 decision, the appellate court held the trial court erred in concluding Entergy was not Rainey’s statutory employer at the time of her fall at Entergy’s Willow Glen facility.
 
 Rainey v. Entergy Gulf States, Inc.,
 
 06-816, p. 1 (La. Ct.App. 1 Cir. 2/13/09), 6 So.3d 877, 879. The
 
 per curiam
 
 declared a majority of the judges either agreed or concurred with Judge Kuhn’s concurring opinion in
 
 Rainey,
 
 06-816, 993 So.2d at 741.
 
 Rainey,
 
 06-816 at p. 1, 6 So.3d at 879.
 

 Adopting Judge Kuhn’s reasoning, the majority found La. Rev.Stat. 23:1061 A(3), which must be strictly construed, requires a
 
 “written contract ...
 
 which recognizes the principal as a statutory employer”, but does not require both parties to affix a handwritten signature to the agreement.
 
 Rainey,
 
 06-816 at p. 6, 993 So.2d at 745. The appellate court relied upon
 
 Fleming v. JE Merit Constructors, Inc.,
 
 07-926, p. 11 (La. Ct.App. 1 Cir. 3/29/08), 985 So.2d 141, 147, which held in the absence of a statute prescribing the method of affixing a signature, it may be written by hand, printed, stamped, typewritten, engraved, or provided by various other means. The court held the addendum valid because it was
 
 *222
 
 signed by both ABB and Bobbie Babin.
 
 Rainey,
 
 06-816 at p. 7, 993 So.2d at 745.
 

 The appellate court further found the addendum valid based on ABB’s signature alone. Noting other statutes expressly require both a writing and a signature, the court reasoned if the legislature had intended a writing and a signature by both parties, it would have expressly so provided.
 
 Rainey,
 
 06-816 at p. 7, 993 So.2d at 745-746. Moreover, the Court of Appeal found Entergy was not required to |asign the addendum, which was prepared under Entergy’s direction and reflected Entergy’s clear intent to be bound once ABB assented to it.
 

 The appellate court addressed plaintiffs argument that even if the addendum met the requirements of La. Rev.Stat. 23:1061 A(3), the lack of credibility and reliability could not be overlooked. Plaintiff questioned Entergy’s finding of the addendum two days before trial. Plaintiff also argued no evidence was presented to show the exact date ABB signed the addendum, as Beckman, who signed for ABB, testified in his deposition he was not the person who dated it. Further, Entergy’s tracking software was unable to show when it received the addendum from ABB.
 

 The majority rejected these arguments. It was undisputed Beckman signed the addendum. Although he testified he did not personally date the addendum, he testified an ABB representative would have dated the addendum no more than one day prior to his signing it, in accordance with ABB’s standard operational procedure. Although the addendum was found shortly before trial and Entergy’s tracking software could not indicate when the addendum was received, this did not affect the validity of the document. There were no facts indicating Entergy and ABB colluded to produce a forged document. Based upon a
 
 de novo
 
 review of the evidence, the majority concluded it was insufficient to warrant a finding the addendum was confected as a result of fraud.
 
 Rainey,
 
 06-816 at p. 11, 993 So.2d at 748.
 

 For assigned reasons joined by two other judges, Judge Whipple dissented. Although she agreed with the majority the trial court legally erred in concluding the written contract contemplated by La. Rev. Stat. 23:1061 A(3) must be signed by both parties, she was unable to find on the record Entergy satisfied its burden of proving the existence of an authentic
 
 timely executed
 
 written addendum.
 
 Rainey,
 
 06-816 at pp. 3-4, 6 So.3d at 881 (Whipple, J., dissenting). The dissent would have affirmed the trial court’s judgment or, alternatively, remanded for a determination of whether the statutory employer relationship existed between Entergy and ABB’s employees, given the credibility issues.
 
 Id.,
 
 06-816 at p. 6, 6 So.3d at 882.
 
 [5]
 

 LAW AND ANALYSIS
 

 Constitutional Appellate Court Majority
 

 Preliminarily, we address plaintiffs argument attacking the appellate court’s judgment as constitutionally invalid. Plaintiff contends for the Court of Appeal sitting
 
 en banc
 
 to modify or reverse a district court judgment, there must be a majority of the full complement of the elected court, not just those sitting. The First Circuit Court of Appeal consists of twelve elected judges. In an order dated July 2, 2008, the court clarified the July 18, 2008 docket was the court’s
 
 en banc
 
 consideration of the case. Judge Hughes had previously recused himself in this matter, thus eleven judges considered and decided
 
 *223
 
 this case. In a split six to five decision, the Court of Appeal reversed in part and vacated in part the trial court’s judgment. Plaintiff maintains six judges do not compose the constitutionally required majority of the full complement of the First Circuit Court of Appeal necessary to reverse or modify the district court judgment.
 

 In support of the argument, plaintiff relies upon
 
 Dauzat v. Allstate Ins. Co.,
 
 257 La. 349, 242 So.2d 539 (1970), specifically its conclusion “when the Court of Appeal sits En banc, a judgment must be rendered by a majority of the full complement or membership of the Court — not a majority of those sitting En banc.”
 
 Id.
 
 at 546.
 

 In opposition, Entergy contends plaintiffs reliance on
 
 Dauzat
 
 is misplaced. In
 
 Dauzat,
 
 decided under the Louisiana Constitution of 1921, the court addressed a practice in the Third Circuit Court of Appeal meant to break ties when the then sixjmemberu court deadlocked while sitting
 
 en banc
 
 — the elimination of one of the six judges by lot or chance.
 
 Dauzat,
 
 242 So.2d at 547 (Barham, J., concurring). Justice Barham explained La. Const. art. VII, Sections 23 and 26 (1921), when read in
 
 pari materia,
 
 forced the conclusion that the chance method of breaking tie votes in the Court of Appeal was unconstitutional.
 
 Id.
 
 at 548. The relevant constitutional articles provided, in pertinent part:
 

 * * *
 

 Courts of appeal having more than three judges shall sit in rotating panels composed of three judges selected in conformity with the rules adopted by the court, two of whom constitute a quorum. However, in exceptional cases or when deemed necessary or expedient by the judges thereof, a court of appeal may sit en banc.
 

 [[Image here]]
 

 La. Const. art. VII, § 23 (1921).
 

 No judgment shall be rendered by any of the courts of appeal unless a majority of the judges sitting in the case have read the record and have concurred in the judgment. If for any reason they cannot concur, or if one or more of the judges are absent, recused, or unable to serve, they, or the remaining judges, may appoint district judges, or lawyers having the qualifications of judges of courts of appeal, to sit in the case.
 

 La. Const, art. VII, § 26 (1921).
 

 Entergy contends the
 
 Dauzat
 
 case created a constitutional fiction that regardless of the number of absences, if a Court of Appeal sat in a grouping of more than three, it necessarily sat
 
 en banc,
 
 because the 1921 Constitution did not allow any composition other than three or
 
 en banc.
 

 Entergy argues
 
 Dauzat
 
 is inapplicable in light of the 1974 constitution. Article V, Section 8 of the 1974 Louisiana Constitution, unlike its predecessor, does not refer to the Court of Appeal sitting
 
 en banc,
 
 but states the appellate courts shall sit in “panels of at least three judges”. In a case decided after the adoption of the 1974 Constitution, ten judges of the First Circuit Court of Appeal, which was composed of twelve judges, participated in the decision, with six judges concurring in the judgment.
 
 McLaughlin v. Fireman’s Fund Ins. Co.,
 
 582 So.2d 203 (La. Ct.App. 1 Cir.1991),
 
 writ denied,
 
 586 So.2d 536 (La.1991). That court held because the law did not require it to sit
 
 en banc,
 
 six judges constituted a majority because Art. V, section 8(A) and (B) of the 1974 Constitution requires the decree be rendered by a majority of those sitting.
 

 We begin our analysis with the relevant constitutional article, La. Const, art. V, § 8 (1974), which provides, in pertinent part:
 

 
 *224
 
 (A) Circuits; Panels. The state shall be divided into at least four circuits, with one court of appeal in each. Each court shall sit in panels of at least three judges selected according to rules adopted by the court.
 

 (B) Judgments. A majority of the judges sitting in a case must concur to render judgment. However, in civil matters only, when a judgment of a district court is to be modified or reversed and one judge dissents, the case shall be reargued before a panel of at least five judges prior to rendition of judgment, and a majority must concur to render judgment.
 

 Under this constitutional article, in deciding whether a majority is determined by the number of appellate judges participating in the decision, or by the full complement of the elected court regardless of the number actually participating in an
 
 en banc
 
 decision, we keep certain principles in mind. The starting point in the interpretation of constitutional provisions is the language of the constitution itself.
 
 Board of Directors of the Indus. Dev. Bd. of the City of Gonzales v. All Taxpayers, Prop. Owners, Citizens of the City of Gonzales,
 
 05-2298, pp. 14-15 (La.9/6/06), 938 So.2d 11, 20;
 
 Ocean Energy, Inc. v. Plaquemines Parish Gov’t,
 
 04-0066, pp. 6-7 (La.7/6/04), 880 So.2d 1, 7. When a constitutional provision is plain and unambiguous and its application does not lead to absurd consequences, its language must be given effect.
 
 City of Gonzales,
 
 05-2298 at p. 15, 938 So.2d at 20;
 
 Ocean Energy,
 
 04-0066 at p. 7, 880 So.2d at 7. Unequivocal constitutional provisions are not subject to judicial construction and should be applied by giving words their generally | ^understood meaning.
 
 Id.
 

 The constitutional language at issue requires “[a] majority of the judges sitting in a case must concur to render judgment.” The clear and unambiguous language requires only a majority of the judges
 
 sitting
 
 in a ease to render a judgment. To ascertain the ordinary, usual, and commonly understood meaning of a word not otherwise defined in the constitution, we look first to a legal dictionary, given that “sitting” is a term of art in the judicial context.
 
 See, Caddo-Shreveport Sales and Use Tax Comm’n v. Office of Motor Vehicles through Dep’t of Public Safety and Corrections,
 
 97-2233, p. 7, (La.4/14/98), 710 So.2d 776, 780. With reference to a judge, sit[ting] is defined “to hold court or perform official functions”. Blace’s Law Dictionary 1513 (9th ed.2009). Thus, the logical and clear interpretation of the phrase in La. Const. art. V, § 8(B) (1974) is a majority of the judges holding court or performing official (judicial) functions must concur to render a judgment. A recused judge has no power or authority to act in a case.
 
 State v. Wilson,
 
 362 So.2d 536, 538 (La.1978);
 
 State v. Price,
 
 274 So.2d 194, 197 (La.1973). To include a recused judge, who is not “sitting” in the case and who has no power to act in the case in the mathematical determination of what constitutes “a majority of the judges sitting in [the] case” would do violence to the plain and unambiguous meaning of the constitutional language.
 

 Moreover, there is no mention of appellate courts sitting
 
 en banc
 
 in Article V, Section 8. The constitution mandates the appellate courts “shall sit in panels of at least three judges” and further mandates in civil cases, where one judge dissents in a three judge panel from the modification or reversal of the district court judgment, the case “shall be reargued before a panel of at least five judges ... and a majority must concur to render judgment.” There is nothing in the language of La. Const. art. V, § 8 (1974) to reasonably support a finding when the cornet of appeal sits
 
 en banc
 
 with a member recused, the number
 
 *225
 
 of judges constituting a majority is determined by the full complement of the court, rather than the number of judges
 
 sitting
 
 in the case.
 

 Although
 
 Dauzat
 
 held when sitting
 
 en bane,
 
 the vote of a majority of the judges on the court rather than a majority of those sitting was necessary to render a decision, there is a significant distinction between
 
 Dauzat
 
 and the case
 
 sub judice.
 
 Under the 1921 Constitution, the Court of Appeal could sit in only two compositions: in panels of three or
 
 en banc.
 
 The present constitution no longer restricts the appellate courts to compositions of three judge panels or
 
 en banc.
 
 The appellate courts are mandated to sit in “panels of
 
 at least
 
 three judges,” thus permitting the appellate courts to sit in compositions of any number as long as at least three are sitting. Therefore, we find
 
 Dauzat
 
 is not binding; it interpreted constitutional provisions that have been significantly changed.
 

 The only other jurisprudence from our court addressing the constitutional language at issue here is
 
 Pattan v. Fields,
 
 95-2338, 95-2341, 95-2342 (La.9/25/95), 661 So.2d 142
 
 (per curiam).
 
 That election case concerned a candidate qualification challenge in which only nine of the thirteen members of the First Circuit Court of Appeal participated, with three judges not participating and one judge unaccounted for. Because it was statutorily required under the Election Code for the appellate court to sit
 
 en banc,
 
 we find that decision is limited to that particular statute, especially as the
 
 per curiam
 
 contains no analysis or examination of the language in La. Const, art. V, § 8(B) (1974).
 

 We find the appellate court decision was constitutionally valid and now turn to plaintiffs argument as to whether the trial court correctly found the addendum was |]Bnot a valid contract because it was not hand-signed by Entergy, the primary reason invoking our discretion to grant this writ.
 

 Signature Issue
 

 Our task is to determine whether the addendum to the Agreement was valid and effective where Entergy is represented by a typed name of one of its employees. First we will address whether a cursive or handwritten signature by Entergy’s representative was required in order for the addendum to be valid and effective.
 

 Written acts are of two kinds, authentic acts and acts under private signature. 5 Saul Litvinoff, Louisiana Civil Law Treatise — The Law of Obligations § 12.11 (2d ed.2001). The addendum at issue clearly falls within the latter category. An act under private signature is one executed by the parties themselves without intervention of a public officer such as a notary public. Litvinoff, § 12.26. “An act under private signature need not be written by the parties, but must be signed by them.” La. Civ.Code art. 1837. The signature of the parties is the only element the law requires to give evidentiary weight to an act privately executed by the parties. Litvinoff, § 12.28. However, and of great significance to the matter before this Court, “where a private act, rather than an authentic one, is concerned, a party’s signature need not be handwritten, and a printed or electronically reproduced facsimile thereof may suffice, as is the case with contracts made in large numbers by one of the parties and executed in printed forms.” Litvinoff, § 12.28.
 

 Furthermore, where a statute requires a signature, a printed or typed “signature” is sufficient provided the signature was authorized and intended to constitute the signature.
 
 Reno v. Travelers Home and Marine Ins. Co.,
 
 02-2637, p. 4 (La. Ct.App. 1 Cir. 11/7/03), 867 So.2d 751, 754
 
 *226
 

 (citing Commerce Loan Co., Inc. v. Howard,
 
 82 So.2d 487, 488 (La.App.Orl.1955),
 
 writ denied,
 
 (La.1955));
 
 Fleming v. JE Mer
 
 it
 
 Constructors, Inc.,
 
 07-926, p. 11 (La. Ct.App. 1 Cir. 3/29/08), 985 So.2d 141, 147. In the absence of a statute prescribing the method of affixing a signature, it may be written by hand, printed, stamped, typewritten, engraved, or by various other means.
 
 Reno,
 
 02-2637 at p. 4, 867 So.2d at 754;
 
 Fleming,
 
 07-926 at p. 11, 985 So.2d at 147.
 

 In
 
 Reno,
 
 the plaintiffs contended their rejection of underinsured motorist (UM) insurance coverage was invalid, because Mrs. Reno had printed both her and her husband’s names on the waiver/rejection of UM coverage form, although the statute at that time required any rejection be signed by the insured or his legal representative.
 
 [6]
 
 Affirming the summary judgment, the appellate court rejected the plaintiffs’ argument that their printed names were inadequate to bind them on the form. The court relied upon the following premises: A signature consists of
 
 both
 
 the act of writing one’s name and of the intention of authenticating the instrument.
 
 Reno,
 
 02-2637 at p. 5, 867 So.2d at 754 (emphasis by the court)
 
 (citing Action Finance Corp. v. Nichols,
 
 180 So.2d 81, 83 (La. Ct.App. 2 Cir.1965)). Although a signature is printed by hand rather than written in cursive, this does not indicate a lack of genuineness.
 
 Reno, (citing Boykin v. DeSoto Parish Police Jury,
 
 359 So.2d 239, 241 (La. Ct.App. 2 Cir.1978),
 
 writ denied,
 
 360 So.2d 199 (La.1978)). It is merely a question of identity and a representation of a person’s willingness to be bound.
 
 Reno, (citing Williamson v. Guice,
 
 613 So.2d 797, 799 (La. Ct.App. 4 Cir.1993),
 
 writ denied,
 
 617 So.2d 937 (La.1993);
 
 Smith v. Travelers Ins. Co.,
 
 560 So.2d 472, 474 (La. Ct.App. 1 Cir.1990),
 
 writ denied,
 
 564 So.2d 325 (La.1990)).
 

 Additionally,
 
 Fleming
 
 is on point with the case
 
 sub judice.
 
 In
 
 Fleming,
 
 Dow Chemical Company, the entity claiming tort immunity as a statutory employer, had sent HBT, Inc., the contractor and injured employee’s immediate employer, a letter on Dow’s letterhead referencing the contract and including amending language to provide for statutory employee status as required by the recently amended Revised Statute 23:1061. That letter closed with:
 

 The Dow Chemical Company
 

 Louisiana Operations
 

 Daniel Bellard
 

 Purchasing Department
 

 The injured employee claimed the statutory employer letter was not a contract as contemplated by La. Rev.Stat. 23:1061 A(3) because it was not signed by a representative of Dow. The court rejected this argument, holding a printed or typed signature was sufficient provided it is authorized and intended to constitute the signature.
 
 Fleming,
 
 07-926 at p. 11, 985 So.2d at 147. Because the court found the typed name was sufficient to constitute a signature where no one disputed Mr. Bellard had authority to sign the letter and it was abundantly clear the closing of the letter was intended to constitute a signature,
 
 Fleming,
 
 07-926 at p. 11, 985 So.2d at 147, the court found it unnecessary to rule on whether the written document contemplated by La. Rev.Stat. 23:1061 A(3) requires the parties’ signatures to be effective.
 
 Id.,
 
 at n. 5. However, the record before this Court does not contain any evidence Bobbie Babin had authority to sign the letter on Entergy’s behalf. Although we find the typewritten “signature” of Bobbie Babin on the addendum clearly offered by Enter-
 
 *227
 
 gy is sufficient if it was authorized and intended to constitute a signature, we now turn to a determination of whether the addendum is valid and effective based only upon the signature of ABB’s representative. If the addendum is valid and effective with only ABB’s signature, we need not remand this matter for a factual determination of whether Bobbie Babin had authority to sign on Entergy’s behalf and whether it was intended the typewritten name constituted a signature.
 

 The addendum contains a signature of R.I. Beckman, “V.P. Construction” for |1SABB immediately underneath the phrase “Agreed Upon by Contractor”. Ronald Beckman’s deposition was admitted into evidence at the trial of the statutory employer issue. Mr. Beckman testified he signed the addendum, he was authorized to bind ABB at the time he signed the addendum, and he intended to bind ABB to the addendum. When certain circumstances are present, a writing under private signature that contains a bilateral contract signed by only one of the parties may constitute written proof of that contract. Litvinoff, § 12.29; 7 Plainol Et Ripert,
 
 Traite Practique de droit Civil Francais
 
 895 (2d ed.1954). It has long been held by our courts that a party who prepares the contract and presents it to the other party for their signature may not later claim he is not bound by the contract because his signature is lacking.
 
 Auto-Lec Stores, Inc. v. Ouachita Valley Camp, No. 10, W.O.W.,
 
 185 La. 876, 883, 171 So. 62, 64 (1936);
 
 Finishers Drywall, Inc. v. B & G Realty, Inc.,
 
 516 So.2d 420, 422 (La. Ct.App. 1 Cir.1987) (Defendant’s argument there was a lack of evidence both parties agreed to the addendum because the addendum only bore plaintiffs signature was rejected because defendant prepared the addendum and sent it with a signature space only for the plaintiff.);
 
 Dyer v. Varnell,
 
 121 So.2d 598, 599 (La. Ct.App. 2 Cir.1960). One who proposes the contract is bound if the offer is made in terms, whether by words, actions, silence or inaction, which evince a design to give the other party the right of concluding by assent and the other party timely assents.
 
 Knecht v. Bd. of Trustees for State Colleges and Universities and Northwestern State Univ.,
 
 591 So.2d 690, 694 (La.1991). With regard to a bilateral act signed by only one party, Professor Litvinoff explains:
 

 ... [T]here is no clearer evidence of the existence of an obligation than its performance, either on its active side through the exercise of a right, or on its passive side through the fulfillment of the corresponding duty. If a party who did thusly perform were allowed to negate that he did so in accordance with a contract that prescribes that performance, on grounds that he did not sign the pertinent writing, then form would li9prevail over substance at the expense of fairness, and technicalities would excuse bad faith.
 

 The conclusion here discussed is consistent with the French doctrine of
 
 commencement de preuve par
 
 écrit— commencement of proof in writing — according to which a party who does not sign a writing under private signature is nevertheless held to its terms if he has in any manner
 
 intellectually
 
 appropriated those terms.
 

 Litvinoff, § 12.29
 

 Considering Louisiana’s jurisprudence and the scholarly authoritative writings of Professor Litvinoff, it cannot be held the addendum, which was prepared by Enter-gy and offered by Entergy to ABB for ABB’s acceptance, is invalid and without effect for lack of Entergy’s signature.
 

 Moreover, the Court of Appeal correctly held
 
 Big ‘A’ Sand & Gravel Co., Inc. v.
 
 
 *228
 

 Bay Sand and Gravel Co., Inc.,
 
 282 So.2d 837 (La. Ct.App. 1 Cir.1973) and
 
 Fredericks v. Fasnacht,
 
 30 La. Ann. 117 (1878) did not apply to this case; the trial court erred in relying upon that jurisprudence to find the addendum must be signed by both parties to be perfected. As noted by the Court of Appeal, the rule a binding contract does not exist until the written agreement is confected and signed by both parties generally applies to the preparation and execution of a written agreement subsequent to the contracting parties’ oral negotiations,
 
 Rainey,
 
 06-816 at p. 7, 993 So.2d at 746. In
 
 Big A’ Sand & Gravel Co.,
 
 the record reflected negotiations between the parties evidenced “it was intended that any agreements reached by them would be incorporated in written contracts to be signed by all parties.”
 
 Big A’ Sand & Gravel Co.,
 
 282 So.2d at 841. The court found overwhelming evidence the defendants had no intention of being bound until mutually satisfactory agreements were struck, reduced to writing and signed by all parties.
 
 Id.
 
 at 842. That court found support in and quoted from
 
 Breaux Bros. Constr. Co. v. Associated Contractors, Inc.,
 
 226 La. 720, 77 So.2d 17, 20 (1954):
 

 12nSince the parties in the instant case
 
 intended from the beginning to reduce their negotiations to a written contract,
 
 neither the plaintiff nor the defendant was bound until the contract was reduced to writing and signed by them.... [T]his case falls within the second class of cases discussed in
 
 Fredericks v. Fasnacht, supra,
 
 and therefore in this case the final consent of the parties was suspended until such time as the contract should be reduced to writing and signed by all the parties. (Emphasis supplied).
 

 Notable in
 
 Fredericks,
 
 and what the trial court in the case presently before us failed to realize, is the distinction made between contracts prepared after negotiations between the parties, where neither intends to be bound until there is a written contract, and verbal contracts which do not need to be reduced to writing. The
 
 Fredericks
 
 court wrote:
 

 ... It is elementary in our law, that where the
 
 negotiations contemplate and provide that there shall be a contract in writing,
 
 neither party is bound until the writing is perfected and signed.
 
 The distinction is manifest between those cases in which
 
 there is a complete verbal contract, which the law does not require to be reduced to writing, and a subsequent agreement that it shall be reduced to writing, and those in which, as in this case,
 
 it is a part of the bargain that the contract shall be reduced to writing.
 
 In (the) first class of cases, the original verbal contract is in no manner impaired by the failure to carry out the subsequent agreement to put it in writing. In the second class of cases, the
 
 final consent is suspended;
 
 the contract is inchoate, incomplete, and it can not be enforced until it is signed by all the parties.
 

 Fredericks,
 
 30 La. Ann. at 118 (emphasis supplied).
 

 Although the court was distinguishing between a written contract prepared subsequent to negotiations and verbal contracts, the rule that the written contract is not binding until the written contract is perfected and signed generally applies where the written contract is prepared subsequent to negotiations between the parties contemplating a written agreement. Consent is an elemental and essential component of any contract; requiring signatures in situations where a written contract is prepared after negotiations between the parties contemplating such would ensure the parties consented to the terms. Moreover, the court in
 
 Dyer v. Varnell,
 
 121
 
 *229
 
 So.2d 598, 599 (La. Ct.App. 2 Cir.1960), determined the progeny of
 
 Fredericks
 
 was inapplicable where the party that prepared the written contract of lease and presented it to the lessee, who signed it, claimed it was not executed because it lacked his signature. The party that prepared the contract and proposed its terms is bound even if his signature is missing.
 

 There is nothing in our Civil Code or civilian tradition requiring a signature by the party who prepared and offered the bilateral contract, where such contract was
 
 not
 
 prepared after negotiations between the parties with the intent to execute a written contract in order for that contract to be valid and effective. For the above and foregoing reasons, we find the addendum is valid and effective based solely upon the signature of ABB’s representative, who testified he was authorized and intended to bind ABB at the time he signed the addendum.
 

 As an additional argument, Rainey urges the addendum lacked credibility so it should be given no evidentiary weight. Plaintiff correctly notes the entire remanded trial almost exclusively addressed the circumstances under which the letter/addendum was found and their attack upon the weight or credibility of the letter/addendum. Plaintiff contends the trial court did not find the addendum to be credible, because in its reasons for judgment the trial court wrote it “did not dispute the fact that there existed a
 
 purported
 
 written addendum ... even though there is
 
 some question
 
 as to the circumstances in which the addendum to the original contract was found.” (emphasis plaintiffs)
 

 Contrary to plaintiffs argument, we find the single sentence in the trial court’s written reasons for judgment is insufficient to support a finding the trial court made a credibility determination with regard to the addendum. We find the trial court could have referred to the “purported” addendum because it found the addendum to be ^legally insufficient. The sentence in the reasons for judgment is subject to interpretation and is not a clear and unequivocal expression by the trial court that it made a factual finding. It is clear from the trial court’s reasons that its judgment denying the statutory employer tort immunity defense was based upon its finding the addendum did not meet the statutory requirement of a written contract because it was not signed by Entergy. We agree with the Court of Appeal’s treatment of this issue.
 

 In concluding the addendum was not confected fraudulently, the Court of Appeal found although Beckman testified he did not personally date the addendum, he also testified, in accordance with standard operational procedure, an ABB representative would have dated the addendum no more than one day prior to his signing it. Although the appellate court did not mention it, we further note Beckman testified he did not sign papers that are misleading on dates.
 

 The appellate court further found it to be of no moment that Beckman may not have signed the addendum on the date written on the document. It found the transmittal letter attached to the deposition showed ABB had tendered the addendum to Entergy on March 10, 1998. Leaving aside the plaintiffs evidentiary objections to the admissibility of this proffered letter, we find Beckman’s uncontra-dicted deposition testimony was sufficient to show he signed the document on or about March 10, 1998, almost a year before the subject accident. According to Beckman’s testimony, he did not sign papers that were misleading on dates by more than one day. Thus, even if he actually signed the document on March 11, 1998, the written contract addendum was
 
 *230
 
 in existence at the time of the subject accident.
 

 Finally, the Court of Appeal found, despite the inability of Entergy’s tracking software to indicate when the addendum was received and the addendum was located shortly before trial, these factual circumstances did not affect the validity of the ^document itself. There were no facts indicating that Entergy and ABB colluded to produce a forged document.
 
 Rainey,
 
 06-816 at p. 11, 993 So.2d at 748. We further observe only three witnesses testified at the trial, and the bulk of the testimony was by John Braymer, Enter-gy’s in-house counsel, who began the search for the addendum when he realized hired counsel was not presenting a statutory employer immunity defense. Braymer’s testimony was uncontradicted; there was nothing in the record to discredit Braymer’s testimony. We find no error in the appellate court’s review.
 

 CONCLUSION
 

 In conclusion, we find the appellate court did not err in reversing the trial court judgment, which denied Entergy’s affirmative defense of statutory employer tort immunity. The typewritten signature of Entergy’s representative on the addendum was sufficient if it was authorized and intended to constitute a signature. Moreover, the addendum was valid and effective based only upon the signature of ABB’s representative, as Entergy was the party who prepared and presented the contract addendum to ABB. Thus, it is not necessary to remand this matter for a factual determination of whether Entergy’s representative intended the typewritten signature to constitute his signature. Additionally, we find no error in the appellate court’s review concluding the evidence was insufficient to find the addendum was con-fected fraudulently. The addendum was signed by ABB on or no more than one day later than March 10, 1998; plaintiff failed to prove otherwise. Finally, we reject plaintiffs argument that our state constitution required a majority of the full complement of the appellate court to concur to render judgment when less than the full complement of the Court of Appeal is sitting
 
 en banc.
 
 The plain and unambiguous language of La. Const. art. V, § 8 requires only a majority of the judges sitting to concur to render a judgment. The
 
 en banc
 
 composition in this case consisted of eleven judges as one judge was recused. Thus, six judges concurring in the judgment composed a constitutional majority.
 

 DECREE
 

 For the foregoing reasons, we affirm the judgment of the Court of Appeal. AFFIRMED.
 

 *
 

 Kimball, C.J., participated in oral argument but did not participate in the deliberation of this opinion. Retired Judge Thomas C. Wicker, Jr., assigned as Justice
 
 ad hoc,
 
 sitting for Justice John L. Weimer, recused. Judge Benjamin Jones, of the Fourth Judicial District Court, assigned as Justice
 
 Pro Tempore,
 
 participating in the decision.
 

 [1]
 

 . At the time of the trial of the statutory employer defense issue, Vera Rainey was deceased. Her children, Jo Ann Mays and James McCallister, were substituted as parties in this action.
 
 Rainey v. Entergy Gulf States, Inc.,
 
 01-2414 (La. Ct.App. 1 Cir. 6/25/04), 885 So.2d 1193. Additionally, Leonard Cardenas, III, Esq., who was retained by and represented Rainey in connection with this suit, was allowed to intervene in the proceeding to protect any interests and rights he may have and to assert a privilege for any attorney's fees
 
 *218
 
 and costs. Thus, any reference to plaintiff in-the portion of this opinion concerning the trial of the statutory employer issue necessarily refers to these parties. For sake of clarity, we will refer to these parties as “plaintiff” throughout this opinion.
 

 [2]
 

 .
 
 Rainey v. Entergy Gulf States, Inc.,
 
 09-572 (La.6/19/09), 10 So.3d 747.
 

 [3]
 

 . Plaintiff's counsel disputed that characterization of Pennison’s deposition testimony; portions of that deposition were admitted as Plaintiff's Exhibit 10.
 

 [4]
 

 . As we observed in
 
 Rainey v. Entergy Gulf States, Inc.,
 
 08-2233, p. 1, n. 2 (La.12/12/08), 996 So.2d 1058, 1059, although three judges dissented from the order denying the motion to dismiss the appeal for lack of jurisdiction, Judge Pettigrew concurred in the
 
 per curiam
 
 stating although he found the court had no jurisdiction to reach the merits of the appeal, the majority found otherwise. Thus he felt compelled to address the merits and found no legal or manifest error on the part of the trial court.
 

 [5]
 

 . For the sake of completeness, we note Judge Pettigrew dissented, finding no legal or manifest error on the part of the trial court. Judge Welch dissented without assigning reasons.
 

 [6]
 

 . La. Rev.Stat. 22:1406(D)(1)(a)(ii) (West 1998).