MAX N. TOBIAS, JR., Judge.
hThe plaintiff, United States Risk Management, L.L.C. (“US Risk”), appeals the trial court’s granting of a “Motion for Judgment on the Pleadings and/or Motion for Summary Judgment (hereinafter, “the motion”)” in favor of defendant, Lee Day. Having determined that a genuine issue of material fact exists as to the parties’ intent, we reverse the trial court’s granting of the motion and remand the matter to the trial court for further proceedings.
FACTS AND PROCEDURAL HISTORY
This is an action to enforce restrictive covenants in an employment agreement. On or about 1 July 2007, Lee Day was employed by US Risk as a manager in its Baton Rouge office. In conjunction with his employment by US Risk, Mr. Day signed a document entitled Employment Agreement (“Agreement”), which contains the following language in the first paragraph:
This employment agreement (“Agreement”) is entered into by and between Lee Day (“Employee”) and United States Risk Management, LLC [sic] (“Company”) and will be effective as of the date this Agreement is executed by the parties.[1]
li>The Agreement does not contain the handwritten signature of any representative of US Risk, but rather the typed signature of Tracey D. Dodd, a “principal and member” of US Risk.[2] It is undisputed that Mr. Day signed the Agreement by hand, accepted and received the $15,000.00 signing bonus, and remained in the employ of US Risk from July 2007 until his termination in February 2010.
On 10 May 2010, US Risk filed a “Petition for Injunctive Relief,” seeking to en *1102 force the non-competition clause against Mr. Day found in Section 7 of the Agreement.[3] In response, prior to filing an answer, Mr. Day filed the motion asserting that, according to the express language of the Agreement, the non-competition clause contained therein never became effective or unenforceable as a matter of law because US Risk failed to properly execute or sign the Agreement, which expressly states that it will only be effective when it is “executed by the parties.”
Without assigning reasons, on 24 February 2011, the trial court entered judgment granting the motion, dismissing all claims asserted by US Risk against Mr. Day, with prejudice, and ordered each party to bear its or his own costs. From this judgment, US Risk timely appealed, claiming the trial court erred in finding the Agreement unenforceable as a result of US Risk’s failure to affix a handwritten signature to the Agreement and in finding that the non-competition clause violated the time restrictions imposed by La. R.S. 23:921.
| .DISCUSSION
A motion for judgment on the pleadings is a procedural device found in La. C.C.P. art. 965, which provides, in pertinent part: “Any party may move for judgment on the pleadings after the answer is filed,.... ” [Emphasis supplied]. The Code precludes use of a motion for judgment on pleadings when an answer has not been filed. Succession of Harrison, 408 So.2d 362 (La.App. 1st Cir.1981). Mr. Day filed his motion prior to filing his answer. Thus, while Mr. Day’s motion for summary judgment was appropriately filed under La. C.C.P. art. 966 A, Mr. Day’s motion for judgment on the pleadings was not.[4] See Harrison, 408 So.2d at 363. Accordingly, we review the trial court’s judgment as an appeal of the granting of a motion for summary judgment.
An appellate court reviews the granting or denial of a summary judgment de novo. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318, 325 (La.1993).
Our task in this case is to determine whether the Agreement, which expressly states that its effectiveness commences upon its “execution” by both parties, became effective and enforceable when Mr. Day affixed his handwritten signature, but US Risk only affixed the typed name of a “principal.” Undeniably, Louisiana’s public policy disfavors non-competition agreements. “Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, ... shall be null and void.” La. R.S. 23:921(A)(1). However, that statutory prohibition is subject to the exception granted in Section C, which provides, in pertinent part:
[4Any person ... who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.
Prior to its revision in 1989, the non-competition prohibition was embodied in *1103 La. Acts 1962, No. 104, which stated that “[n]o employer shall require or direct any employee” to enter into an agreement not to compete. [Emphasis added.] That former language suggested a legislative concern of preventing employers from forcing non-competition agreements as a condition of employment. However, the current statute is couched in permissive terms, suggesting recognition of the competitive realities of the business world.
Regardless of whether the 1989 revision of La. R.S. 23:921 signifies a change in public policy with respect to non-competition agreements, the courts of this state have been consistent in strictly construing such agreements against the party seeking enforcement. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695, p. 5 (La.6/29/01), 808 So.2d 294, 298; Clear Channel Broadcasting, Inc. v. Brown, 04-0133, p. 4 (La.App. 4 Cir. 3/30/05), 901 So.2d 553, 555-56. The rule of strict construction permeates the arguments of US Risk regarding the effectiveness and enforceability of the non-competition clause in the instant case.
Relying on the Supreme Court’s decision in Rainey v. Entergy Gulf States, Inc., 09-572, (La.3/16/10), 35 So.3d 215, US Risk argues that the typewritten name of its “principal,” Ms. Dodd, was sufficient to constitute the signature of US Risk, indicating its consent to the Agreement and to be bound thereby. Alternatively, US Risk contends that because it prepared the Agreement and | ¿presented it to Mr. Day, who accepted it as evidenced by his handwritten signature, the Agreement became effective and enforceable. Rainey, 09-572, pp. 18-21, 35 So.3d at 227-229.[5]
Contrariwise, Mr. Day argues that the Agreement specifically states that it becomes effective as of the date it is “executed” by both parties and that the term “execute” as used throughout the Agreement contemplates more than the typewritten name of a party. Mr. Day contends that “execute” means each party affixing a handwritten signature to the document and thusly, since the Agreement was never actually signed by a representative from US Risk, it never became effective. Consequently, he argues, the provisions are not enforceable.
The mover for summary judgment must make a prima facie showing of each fact necessary to prove his case; if a prima facie case is made, the burden shifts to the opposing party to raise genuine issues of material fact to preclude the granting of summary judgment. La. C.C.P. art. 966 B. Even assuming in the instant case that Mr. Day correctly established all facts upon which his motion for summary judgment rested, we find he would still not be entitled to summary judgment. The only documents Mr. Day attaches to the motion are a copy of the Agreement and the previously filed affidavits of Ms. Dodd and Thomas Sumner, “principal[s] and *1104 | r,manager[s]” of US Risk.[6] The documents relied upon by Mr. Day do not address the gravamen in this case, and that is, whether the parties intended, for the Agreement to take effect only after affixing handwritten signatures to the document. Despite Mr. Day’s contention that US Risk’s handwritten signature was required, US Risk argues that the typed name of its “principal” was sufficient to express the limited liability company’s consent to the Agreement. Presumably, when Mr. Day signed the Agreement on his own behalf, he intended to be bound by its terms. Moreover, it is undisputed that both parties actually performed under the Agreement’s terms. Mr. Day received a $15,000.00 “signing bonus” and worked for the company from July 2007 until February 2010 when he was terminated.
The Agreement does not expressly define “execute” although the term is used throughout the contract. Nonetheless, construing the Agreement as a whole, we find the plain language of the Agreement does not delineate what constitutes “executing” the contract. Black’s Law Dictionary defines an “executed contract” alternatively as “[a] contract that has been fully performed by both parties” or a “signed contract.” BLACK’S LAW DICTIONARY 344 (8th ed.2004). Black’s further notes that “[t]he term ‘executed’ is a slippery word. Its use is to be avoided except when accompanied by explanation ...” Id. at 609 (quoting WILLIAM R. ANSON, PRINCIPLES OF THE LAW OF CONTRACT 26 n.* (Arthur L. Corbin ed., 8d Am. ed.1919)).
While Mr. Day’s supporting memorandum expresses his current position that the term “execute” as used throughout the Agreement meant more than simply ^affixing a typewritten name (arguing that US Risk would not have accepted his typewritten signature), Mr. Day does not provide any evidence, i.e. affidavit or otherwise, suggesting that he did not intend to be bound by the terms of the Agreement, or at least some of them, when he signed the document, or that he did not intend to be bound until a representative from US Risk physically signed as well, especially since Mr. Day performed under the contract for a period of over three years.[7]
In Rainey, supra, the Court, citing LIT-VINOFF, § 12.29; 7 PLAINOL ET RI-PERT, Traite Practique de droit Civil Francais 895 (2d ed.1954), stated that “[w]hen certain circumstances are present, a writing under private signature that contains a bilateral contract signed by only one of the parties may constitute written proof of that contract.” With regard to a bilateral act signed by only one party, Professor Litvinoff explains:
... [T]here is no clearer evidence of the existence of an obligation than its performance, either on its active side through the exercise of a right, or on its passive side through the fulfillment of the corresponding duty. If a party who did thusly perform were allowed to negate that he did so in accordance with a contract that prescribes that performance, on grounds that he did not sign the pertinent writing, then form would prevail over substance at the expense of fairness, and technicalities would excuse bad faith.
The conclusion here discussed is consistent with the French doctrine of *1105 commencement de preuve par écrit— commencement of proof in writing — according to which a party who does not sign a writing under private signature is nevertheless held to its terms if he has in any manner intellectually appropriated those terms.
LITVINOFF, § 12.29.
Rainey, pp. 18-19, 35 So.3d at 227.
We find that the term “execute” used in the Agreement does not clearly and unambiguously evidence the parties’ intent. The mover is required to attach documentation supporting his right to judgment. Mr. Day has not attached any supporting documentation asserting that he did not intend to be bound by the Agreement unless or until an authorized representative of US Risk affixed a handwritten signature to the document. Moreover, Mr. Day’s performance under the Agreement suggests that he, in fact, did intend to be bound by at least some of the Agreement, albeit, it is uncertain whether he intended to be bound by the non-competition clause. Nothing properly appears in the record that resolves the intent issue.
Having concluded that a genuine issue of material fact exists to the intent of the parties as to whether handwritten signatures were required in order for the Agreement to become effective or enforceable, we find the motion for summary judgment was improperly granted. This conclusion makes unnecessary and/or premature our consideration of whether the non-competition clause violates the time restrictions imposed by La. R.S. 23:921.
For these reasons, the trial court’s granting of the motion in favor of Lee Day and against United States Risk Management, L.L.C. is reversed and the matter is remanded for further proceedings.

REVERSED AND REMANDED.

ARMSTRONG, C.J., concurs in the result.
LOMBARD, J., concurs.

. The Agreement also contained a two-year non-competition clause effective when Mr. Day's employment with US Risk ended and provided for a $15,000.00 signing bonus.

. For purposes of this appeal, counsel for US Risk conceded at oral argument that the Agreement does not contain a handwritten signature of any US Risk principal or member with authority to execute the contract.

. US Risk has not yet requested a trial of the injunction.

. Mr. Day filed an answer before he filed his motion. On a time-line basis, for purposes of judgment on the pleadings, the motion for judgment on the pleadings was premature.

. Rainey stands for the proposition that "where a statute requires a signature, a printed or typed ‘signature’ is sufficient provided the signature was authorized and intended to constitute the signature.” [Emphasis supplied.] Id., p. 15, 35 So.3d at 225. The record before us contains no evidence establishing that Ms. Dodd had the authority to bind US Risk to the terms of the Agreement. In its petition, US Risk avers that it is a limited liability company authorized to do business in Louisiana. Nothing in Louisiana’s law pertaining to limited liability companies defines "principal” and what role and/or authority, if any, a "principal” has in a limited liability company. Thus, while Ms. Dodd's typewritten signature appears on the signature page of the Agreement immediately above her "Title” identified as "Principal,” it is unclear from the Agreement as to her authority; and no affidavit is presented attesting as to what authority, if any, she had to bind US Risk. See La. R.S. 12:1311-1314.

. The affidavits of Ms. Dodd and Mr. Sumner were actually attached to a memorandum filed by US Risk in opposition to an exception of improper venue previously filed by Mr. Day in response to US Risk’s petition.

. We note that it is implicit in US Risk’s filing of its petition and its opposing of the motion that it intended to be bound by the Agreement.